GEORGE THOMAS

*v.*

BOARD OF TRUSTEES OF THE ILLINOIS INDUSTRIAL
UNIVERSITY *et al.*

1. MECHANIC'S LIEN—*law in relation to, does not apply to work done for the State.* The Mechanic's Lien Law refers to individuals and private corporations, and does not apply to labor done or materials furnished for the State, or general or local public, or even for those who hold property of the State in trust, and are improving it for and under the direction of the State.

2. The fact that a State institution is managed by a board of trustees, who may sue and be sued, does not authorize the special and restricted remedy against the property of the State under their control, provided by the Mechanic's Lien Law against individuals and private corporations, especially where the trustees are expressly prohibited from binding the State beyond the amount appropriated for the use of the institution.

3. SAME—*work only partly done.* A workman who undertakes to perform an entire contract can not quit when he chooses, without cause, and enforce a lien for such portion of the work as he may have performed. Nor can he enforce a lien for each week's wages. He has no power to split up an entire demand, and maintain several suits, and enforce several liens.

4. PLEADING—*petition for a mechanic's lien by sub-contractor.* A petition to enforce a lien by a sub-contractor, which fails to set out the terms of the contract with the principal contractor, and that the sub-contract was within the power of the principal contractor to make, so as to bind the owner of the property, or that there was a sufficient fund due the principal contractor to pay the petitioner, or that he had performed his contract, is substantially defective.

5. THE ILLINOIS INDUSTRIAL UNIVERSITY, is a State institution, and not subject to the Mechanic's Lien Law.

WRIT OF ERROR to the Circuit Court of Champaign county ; the Hon. C. B. SMITH, Judge, presiding.

This was a proceeding to enforce an alleged mechanic's lien upon the property of the Illinois Industrial University.

Mr. JAMES A. KENNEDY, for the plaintiff in error.

Messrs. CUNNINGHAM & WEBBER, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is urged, in affirmance of the decree of the court below, that the entire property and management of the university belongs to and is under the control of the State, and that the Mechanic's Lien Law does not apply to the case. When that law is considered, it is apparent that it contains no language from which it can be inferred that the legislature intended its provisions to apply to labor done for, or materials furnished to, the State, in the improvement of its real estate. The entire scope of that act refers to individuals and to private corporations, and it would violate the long and ever recognized canon of interpretation, that laws which refer to inferiors can not be held to embrace superiors, or laws referring to individuals do not embrace the State. This law only, in terms, applies to persons, and can not be held to embrace the State, or the general or local public, or even those who hold property of the State in trust, and are improving it for and under the direction of the State. It then follows that, if this is a State institution, belonging to and entirely controlled by the State, at its expense, the workman has no lien on the property for his pay.

Is this university, then, a State institution, or is it a private corporation? It has been largely endowed with funds by the State, received by donation for the purpose, from the general government. The act by which it is organized places its control under the authority of the State. The Governor is required to appoint, and the Senate to confirm, the trustees who control the institution, except the Governor and Superintendent of Public Instruction are made *ex officio* members of the board of trustees, for the management of the fund and the government of the university. There is nothing in the

act from which it can be inferred that this institution was, in any respect, to be a private corporation, either in whole or in part. It was founded on donations from the general government, the county of Champaign, the Central railroad, and, it may be, from private individuals. These donations consisted of land scrip from the general government, lands and bonds given by Champaign county, freights by the railroad company, the title to which was transferred to the State, and became the property of the State, to hold in trust for the purposes of the university, and these trustees and officers were appointed by the authority of the State for its government and control. Private individuals have no interest in or control over it, but it is, in every sense of the term, a State institution. It, with its property, management and control, is entirely under the power of the General Assembly, and this has been recognized by the General Assembly by making subsequent appropriations for the erection of buildings, and to defray expenses, and by expressly prohibiting the board of trustees from obligating the State for the payment of any sum of money in excess of the appropriations thus made. Sec. 3, acts 1871–2, p. 143.

The officers of the incorporation are paid, either directly or indirectly, from funds belonging to the State. All of the interest derived from the funds invested, from rents from real estate, and for tuition paid by pupils, or otherwise, belongs to the State, and hence there can be no pretense that the institution is private, or is to be governed by laws relating to private persons or corporations.

Had this body been mixed in its character, and a part had been held by private individuals, and another part held by the State, then the rule would, no doubt, be different. It has been held that, where the State enters into trade or business with private individuals associated together in a corporate capacity, then such organization may be subjected to all of the legal remedies which apply to private corporations. Nor can we infer from the fact that the board of trustees may sue

and be sued, that the General Assembly intended that the special and restricted remedy, by suing to enforce a mechanic's lien, was intended to be given. That idea is clearly negatived by the provision which expressly prohibits the board of trustees from binding the State for the payment of any sum beyond the amount appropriated. This excludes all idea that the property could become bound, by lien or otherwise, for any sum, but that the improvements should be paid out of the appropriation, and not by sale of the land or buildings upon which the university was erected. In this, as well as in other particulars, this differs from the case of *The Board of Education* v. *Greenbaum*, 39 Ill. 609.

We are unable to perceive, in the organization of this body, any material difference, such as should distinguish it from the State institutions for the blind, the insane, or the deaf and dumb. We are therefore clearly of opinion that no lien attached in favor of plaintiff in error for labor performed or materials furnished. But even if it could be held that it did, the petition was substantially defective. It fails to set out the terms of the contract with the first or principal contractor, and that the sub-contract was within the power of the principal contractor to make, so as to bind the owner or the property, or that there was a sufficient fund due the principal contractor to pay plaintiff in error, nor does it appear that he had performed his contract.

It can not be held that, in case a workman undertakes to perform an entire contract, he may quit when he chooses, without cause, and enforce a lien for such portion of the work as he may have performed. He has no power to split up an entire demand, and maintain several suits and enforce several liens. He could not maintain a suit to enforce his lien for each week's wages, and thus harrass and vex with costs the owner and principal contractor. He should perform his contract, unless wrongfully prevented, before he can enforce a lien. Any other construction of the statute would render it liable to be made an engine of oppression, instead of the

means of obtaining justice. Plaintiff in error, so far as we can see, has a complete remedy by suit under the statute, against the board of trustees and the contractor, by recovering judgment and by execution thereon.

We, for the reasons indicated, must hold that the decree of the court below must be affirmed, which is done.

*Decree affirmed.*