## JACOB MARTENS, Appellant, *vs.* JAMES J. BRADY, Auditor of State, *et al.* Appellees.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. CONSTITUTIONAL LAW—*provisions of statute limiting roads which may be State aid roads are not invalid.* The provisions of that portion of the Roads and Bridges act of 1913 relating to State aid roads which limit the percentage of road mileage in counties of different classes and limit the designation of such roads to "highways connecting the principal cities and trading points in each county with each other," etc., are not invalid as local or special legislation, as the classification adopted in fixing such mileage and in designating the roads is reasonable and well founded.

2. SAME—*State Aid Roads law is not invalid as a special law relating to roads or regulating township affairs.* That portion of the Roads and Bridges act of 1913 relating to State aid roads applies to all highways in the State within the description or classes specified in the act, and such law is not invalid as a local or special law relating to laying out highways or regulating county or township affairs.

3. SAME—*what is not required to make a law a general law.* The requirement of the constitution that laws shall be general does not mean that every statute shall affect alike every person and locality in the State.

4. SAME—*when classification is not invalid because it applies to only one county.* If the conditions existing in any county at the time of the passage of an act furnish a reasonable basis for making it apply only to that county and the classification is reasonably appropriate for the purpose of the legislation, it is not essential to the validity of such classification that the conditions upon which it is based be such that they may at some future time obtain in every other county in the State.

5. SAME—*proviso to section 15a of an act relating to State aid roads is not invalid.* The proviso to section 15a of article 4 of the Roads and Bridges act of 1913, (Laws of 1913, p. 528,) which provides for allowing to a county twenty-five per cent of the amount collected in such county for roads and bridges, provided such county collects more than forty per cent of the total amount appropriated by the General Assembly for building roads, is not invalid because it affects Cook county, alone.

6. SAME—*sections 15a and 15b do not attempt to appropriate money out of State treasury.* Sections 15a and 15b of article 4 of

the Roads and Bridges act merely provide a plan for apportioning among the different counties of the State the fund appropriated for such purpose by the acts of June 26, 27 and 28, 1913, and such sections do not attempt to appropriate money from the State treasury.

7. SAME—"building and maintaining" State aid roads may be provided for in one item of appropriation bill. The building and maintaining of State aid roads do not constitute such separate and distinct matters as are required by the constitution to be separately itemized in a bill making an appropriation for that purpose.

8. SAME—act relating to State aid roads does not violate section 20 of article 4 of constitution. The act relating to State aid roads does not violate section 20 of article 4 of the constitution, which prohibits the State from paying, assuming or becoming responsible for the debts or liabilities of any public or other corporation, association or individual and from loaning its credit for such purpose.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

D. D. DONAHUE, HUFF & HUFF, and BARRY & MORRISSEY, for appellant.

PATRICK J. LUCEY, Attorney General, and THOMAS E. DEMPCY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, in his capacity as tax-payer, filed his bill in chancery in the circuit court of Sangamon county to enjoin the Auditor of Public Accounts from drawing warrants on funds appropriated out of the State treasury for the purpose of carrying out the provisions of "An act to revise the law in relation to roads and bridges," approved June 27, 1913, (Laws of 1913, p. 520,) and also to enjoin the State Treasurer from paying any such warrants. The bill alleged that part of the act relating to what are called "State aid roads" is unconstitutional and void. A demurrer to the bill was sustained by the circuit court and the bill dismissed for want of equity. This appeal was prose-

cuted direct to this court because the constitutionality of a statute is involved.

The first thirty-three sections of the act provide a plan for the construction and maintenance of roads at the joint expense of the State and county, called in the act State aid roads. The appellant alleges these provisions of the act are unconstitutional. Section 1 provides that the term, "State road and bridge fund," when used in the act, shall mean all moneys appropriated by the State for road and bridge purposes; that the term "State aid roads" shall mean all roads and bridges constructed, repaired or improved at the joint expense of the State and any county or counties within the State. Section 2 creates a department to be known as the "State highway department," the officers of which shall consist of the members of the State highway commission, the chief State highway engineer, the assistant highway engineer and various subordinate employees as provided in the act. Section 3 provides for the appointment of the State highway commission by the Governor, their qualifications, duties, terms of office and salaries. Said commission is given general supervision of highways and bridges constructed or maintained, in whole or in part, by the aid of State moneys. Other portions of said section 3 relate to the powers of the State highway commission in carrying out the provisions of the act. Sections 4, 5, 6 and 7 also relate to the powers and duties of persons connected with the State highway department and the appointment of subordinate agents and employees. Section 8 provides for the appointment of a county superintendent of highways, to be selected by the county board in the manner in said section specified, and prescribes the duties and powers of said officer. Section 9 provides that public highways or sections thereof, including bridges, may be laid out, improved or constructed at the joint expense of the State and any county within the State, and in such case the State shall contribute one-half the ex-

pense and the county or counties through which the highway or major portion thereof passes shall contribute one-half. Such highways are known as State aid roads, but no road or part thereof within the corporate limits of any city or village can be constructed with State aid. Section 10 makes it the duty of the board of supervisors or county commissioners, at their next meeting after the passage of the act, to designate the public highways within their respective counties which shall come under the provisions of the act. "The highways to be designated by the county boards shall be as nearly as possible those highways connecting the principal cities and trading points in each county with each other, and also with the principal cities and trading points in other counties." Section 11 provides that such highways shall not include any portion of a public highway within the corporate limits of any city or village, "nor shall the total mileage of such highways in any county exceed, in counties of the first class, more than fifteen percentum of the total public road mileage of that county, nor exceed twenty percentum of the public road mileage in counties of the second class, and shall not exceed twenty-five percentum of the public road mileage in counties of the third class." The public road mileage of the counties is to be as determined and published by the State highway commission. By section 12 county boards are required to indicate the highways selected for State aid roads by marking them upon a map showing the public roads and section lines in the county. The map showing the roads designated is to be sent to the State highway commission for examination and final determination. Said State highway commission has authority to make such changes as will best serve to make the most direct routes between cities and trading points of the different counties. By section 13 the highways selected by the county boards, as revised by the State highway commission, shall be the highways to which the act shall apply, and it shall not apply to any other public

highways. By section 14 the map showing the roads desig-
nated for State aid is required to be kept in the office of
the county clerk, and no changes therein can be made ex-
cept by a vote of the county board with the approval of
the State highway commission, and no changes can be made
prior to three years after filing the map. Section 15 pro-
vides that if any county board fails, for six months after
the passage of the act, to forward to the State highway
commission a map indicating State aid roads the selection
may be made by the State highway commission. Section
15a is as follows:

"Sec. 15a. The improvement of a system of State high-
ways as herein provided shall be carried on as follows:
From such appropriations as the General Assembly may
from time to time make for the purpose of carrying out
the provisions of this act, there shall be allotted by the
State highway commission each year for each county an
amount that shall bear the same ratio to the total appro-
priation for that year that the total amount levied in each
county for roads and bridges bears to the total amount
levied in the State for roads and bridges, as determined
from the published reports of the Auditor of Public Ac-
counts from the last year so reported: *Provided,* that to
counties, in which more than forty per cent of the total
amount appropriated by the General Assembly for building
roads is collected, including any amount collected for auto-
mobile and kindred licenses, and devoted to road building
by such appropriation, there shall be allotted, under the
provisions hereof, an amount equal to twenty-five per cent
(25%) of the amount so collected in such county. The
sum so allotted to each county shall be used to defray the
cost of constructing State aid roads when such work is
carried on in conformity with the provisions of this act:
*Provided,* that the allotment made by the State shall not
be used to defray more than one-half the cost of any im-
provement done under the provisions of this act."

By section 15*b* if any county fails, within six months of the date of the allotment, to provide and appropriate an equal amount to that allotted by the State highway commission, then the amount so allotted is forfeited by said county and shall be re-allotted to counties having complied with the requirements of the act. By section 15*c* it is made sufficient acceptance of the allotment if the county board gives notice to the State highway commission that it has assessed a tax to raise its portion of the cost or passed an order submitting to a vote of the people the question of raising an additional tax or issuing bonds for the purpose. Section 16 relates to the initiation of proceedings for the construction of a State aid road by resolution of the county board. Section 17 relates to the duty of the State highway commission upon receipt of a resolution of the county board. Section 18 relates to the survey by the State highway engineer of the highways to be improved and the making of maps, plans, specifications and estimates of cost. Section 19 provides that if the plans require the taking or damaging of property the damages may be ascertained under the Eminent Domain act. Section 20 requires the State highway engineer to make a complete report to the State highway commission of surveys, plans, specifications and estimates, and by section 21 the final determination of said State highway commission is to be transmitted to the county board. Section 22 authorizes the county board to appropriate one-half the cost of improving the State aid roads determined upon if there are sufficient funds in the treasury for that purpose or to raise the money by issuing bonds by vote of the people. Section 23 requires all moneys appropriated by the county board to aid in the construction of State aid roads, and all moneys raised by taxation therefor, to be kept as a separate fund until paid out according to the provisions of the act, and its expenditure for any other purpose is prohibited. Section 24 requires the county board to notify the State highway com-

mission of the method adopted to provide for the contemplated State aid roads. Section 25 provides for the order in which the work shall be taken up in the different counties. Sections 26 and 27 relate to the letting of contracts for doing the work, and section 28 to the payment of the contractors. Section 29 relates to the rights of the contractor under any contract entered into, under the provisions of the act, between the State highway commission and the contractor. Section 30 relates to the powers of the State highway commission in the event of its being unable to let the contract for a sum not exceeding the estimated cost made by the State highway engineer. Section 31 relates to State aid roads on county lines. Section 32 provides for the maintenance by the State of roads constructed or improved under the provisions of the act. Section 33 prescribes the use of State aid roads.

The foregoing are the only sections of the act relating to State aid roads, and the remainder of the act is not involved in this litigation.

The principal argument of appellant against the validity of the act is that it is local or special, in violation of section 22 of article 4 of the constitution. One of the claims upon which this argument is based is, that the act limits the percentage of road mileage that may be selected and authorizes the designation of particular roads to be improved at the joint expense of the State and county. All other roads, after the maximum mileage has been designated, are excluded from becoming State aid roads, and it is contended there is no reasonable basis for the selection of some roads and the exclusion of others. The act authorizes the designation of roads outside the limits of incorporated cities and villages, not exceeding the maximum mileage fixed, to be improved at the joint expense of the State and county. "The highways to be designated by the county boards shall be as nearly as possible those highways connecting the principal cities and trading points in each

county with each other, and also with the principal cities and trading points in other counties." Within these limits roads may be designated as State aid roads until the maximum mileage has been reached. When that has been reached other roads are excluded. The only reference to a classification of counties in the act is in the eleventh section, which provides that the total road mileage shall not exceed fifteen percentum in counties of the first class, twenty percentum in counties of the second class and twenty-five percentum in counties of the third class. This reference to classification was not for the purpose of designating what highways might be brought under the provisions of the act, but for the purpose of fixing the mileage that may be designated. The classification of counties by the act of 1901, relating to fees and salaries, into first, second and third classes has since its enactment been acted upon by every department of the State government as a valid classification, and we would not be justified in saying the legislature was not warranted in adopting that classification as a basis for determining the mileage of highways that might be brought under the provisions of the act. If the law violates the constitution in the respect above mentioned it is because under it all highways in a county can not be made State aid roads. It is a well known fact that a great majority of the travel in any given territory is over a comparatively small mileage of the public highways. The Federal department of agriculture claims to have ascertained, by careful investigation, that from eighty to ninety per cent of the travel is over from fifteen to twenty per cent of the highways in any given community. The fixing of the per cent of road mileage that might be designated for State aid roads was not arbitrary, but was based upon experience and knowledge of the amount of mileage that carries the bulk of the travel over public highways. It is obvious that all the highways in the State could not be improved under the plan of the act, but it was designed

for the improvement and maintenance of such of the highways, in the counties accepting the provisions of the statute, as accommodated the greater part of travel and conferred the greatest possible public benefit. The roads are to be designated in the first instance by the board of supervisors, but their selection is required to be submitted to the State highway commission for revision and approval. When the selection of State aid roads is finally made and approved by the State highway commission up to the maximum mileage allowed, then no other roads in the county can be made State aid roads. Highways inside the limits of incorporated cities and villages (and, no doubt, incorporated towns,) are expressly excluded from being brought under the provisions of the act, and only fifteen, twenty and twenty-five per cent of those outside cities and villages, depending upon the class the county is in, can be made State aid roads. It has been too often decided to now be a subject of legitimate controversy, that it is not required a law shall operate alike upon every person or locality in the State in order to make it a general law. It may be a general law and relate only to persons or things in a single place, or in some places and not in others, if there is any reasonable basis for such classification and reasonable relation between the situation of the persons or places classified and the purposes and objects to be attained. (*People* v. *Kaelber,* 253 Ill. 552; *Booth* v. *Opel,* 244 id. 317; *People* v. *Knopf,* 183 id. 410.) The roads to be brought under the provisions of the act are described as "highways connecting the principal cities and trading points in each county with each other, and also with the principal cities and trading points in other counties." We cannot say that no reasonable basis is shown for distinguishing those roads from highways which are not embraced within that description. We are of opinion the objection that the statute is local or special because only part of the roads in the State can be brought under its provisions is not tenable.

It is also contended the statute is invalid because it violates the prohibition of section 22 of article· 4 of the constitution, that the legislature shall not pass local or special laws laying out, opening, altering and working roads and highways or regulating county and township affairs. Under the act before us the State highway commission has general supervision of State aid roads, but the other highways remain under the control of the county and township authorities. The control of municipal corporations over public streets and highways is subject to the paramount power of the State and the superior control of the State may be exercised at ·any time. (*Chicago and Southern Traction Co.* v. *Illinois Central Railroad Co.* 246 Ill. 146; *State* v. *Atkin,* 64 Kan. 174; 97 Am. St. Rep. 343.) In the distribution of governmental powers the State delegated to municipalities, as governmental agencies of the State, authority and control over the public highways within their respective limits.for the use and benefit not merely of the citizens of the municipality, but of all the people of the State. (*People* v. *Chicago Telephone Co.* 245 Ill. 121; *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58; *People* v. *Suburban Railroad Co.* 178 id. 594.) There is no constitutional prohibition against the State by general law exercising its power over public highways, and as we have before attempted to point out, the act in this respect is not local or special but applies to all highways in the State within the description or class, and does not attempt to regulate county or township affairs. *People* v. *Board of Election Comrs.* 221 Ill. 9.

It is contended section 15*a* is invalid because the proviso is applicable only to counties in which more than forty per cent of the total amount appropriated by the General Assembly for building roads is collected. In other words, a county which pays more than forty per cent of the taxes, including the amount collected for automobile and kindred licenses, shall be allotted from the appropriation made by

the State an amount equal to twenty-five per cent of the amount collected in such county under the provisions of the act. It is contended that the provision for counties paying more than forty per cent of the money appropriated by the State is not a condition that can be common to a class; that no greater number than two counties can each pay more than forty per cent, and the exclusion of every county but two makes the act obnoxious to section 22 of article 4 of the constitution as a local or special law. We have above cited some of the many decisions holding that the requirement that laws shall be general does not mean that every statute shall affect alike every person and locality in the State. Other decisions to the same effect are *People* v. *Hoffman*, 116 Ill. 587, *West Chicago Park Comrs.* v. *McMullen*, 134 id. 170, *People* v. *Cregier*, 138 id. 401, and *Trausch* v. *County of Cook*, 147 id. 534. It is not essential to the validity of an act applying to but one locality in the State on account of conditions existing in that locality, that it must appear that the same conditions will, or may at some time in the future, exist in other localities. If the conditions existing in any county at the time of the passage of an act furnish a reasonable basis for making it apply only to that county, and the classification is reasonably appropriate for the purpose of the legislation, it is not essential to the validity of such classification that the conditions upon which it is based are such that they may obtain in every county in the State. It may be similar conditions may never exist in any other county and the law be valid. The proviso to section 15*a* is applicable to any county which pays more than forty per cent of the taxes, but it is known, and is conceded, that there is but one county in the State to which the proviso applies. Cook county pays forty-five per cent of the tax. We are justified in assuming the tax paid by that county is a fair indication of its proportion of the wealth of the State. It is also a matter of common knowledge that Cook county

contains more than one-third the population of the entire State. We cannot say these conditions did not furnish a reasonable basis for the proviso to section 15a. It would seem almost like begging the question to say that if any other county ever reached a state of population and wealth where it would pay more than forty per cent of the taxes the proviso would apply to it also, for if we are permitted to make use of common knowledge we know it is beyond the range of probabilities, or even possibilities, that any other county should ever pay forty per cent of the taxes. If it should, then such county and Cook county would be paying substantially all the taxes, which could not occur unless the rest of the State should become depopulated and impoverished, which is not a possible condition. Numerous acts have been sustained which, on account of existing conditions at the time of their passage, applied only to certain subjects or certain localities in the State, without regard to whether, in the course of time, the same conditions would exist in other localities to which the act would then also apply. Certainly an act which applies to one class but excludes another class similarly situated is invalid. It has been held that "where a statute does not relate to persons or things as a class but to particular persons or things of a class it is a special as distinguished from a general law." (*Bessette* v. *People,* 193 Ill. 334.) But the section of the statute here involved does not exclude any county which comes within the classification. That it applies to only one county is because the conditions prescribed exist in only one county. The permanency of the conditions upon which the statute is based does not affect its validity.

It is contended by appellant that sections 15a and 15b, and the three appropriation acts appropriating money for State aid roads, violate section 16 of article 5 of the constitution, as amended in 1884. Appellant contends that the constitution, as amended, makes all appropriations out of

the State treasury a separate and distinct subject of legisla-
tion, and that a bill cannot now be an appropriation bill in
part and in part be in relation to other matters; that this
conclusion naturally follows from the fact that the Gover-
nor was given the power to veto any item or section of an
appropriation bill, while other bills are required to be ap-
proved or disapproved in whole. The three appropriation
acts,—two for $400,000 each and one for $300,000,—were
approved on June 26, 27 and 28, 1913, respectively, (Laws
of 1913, pp. 41, 42,) and were no part of the act entitled
"An act to revise the law in relation to roads and bridges,"
approved June 27, 1913. They were appropriations to carry
out the provisions of the last named act but were separate
acts, and were separately approved on three different days.
Sections 15*a* and 15*b* of the act do not attempt to appro-
priate money out of the State treasury. The three ap-
propriation acts before referred to, provide the means for
carrying out the purposes and intent of the act by appro-
priating in all $1,100,000. Sections 15*a* and 15*b* do not
add one penny to that fund, but merely provide a plan for
the apportionment of said fund among the different coun-
ties of the State.

It is further contended that the three appropriation acts
appropriate money "for the purpose of building and main-
taining State aid roads in the several counties of the State,"
and violate section 16 of article 5 of the constitution in
not specifying the amount for building roads in one item
and the amount for maintaining them in another item.
The constitutional provision here invoked is one of import-
ance and must be complied with in all appropriations to
which it is applicable. Building roads and maintaining
them when built are different undertakings, but both are
necessary to carry out the general scheme or purpose of
the act, which is to provide for better highways through-
out the State. The purpose of the constitutional provision
here invoked is to enable the Governor, when passing on

appropriation bills, to consider and act on the items of the appropriation separately. In order to carry out the general scheme of the act, however, the building and maintenance of roads are so closely connected that it is difficult to say where one ends and the other begins. The act itself clearly contemplates but one fund to carry out its provisions, as is evidenced by section 1, which provides "that the term 'State road and bridge fund' when used herein, shall mean all moneys appropriated by the State of Illinois for road and bridge purposes." We do not think the construction and maintenance of State aid roads constitute separate and distinct items which under the constitutional provision it is required should be separately itemized in the bill making the appropriation. Their relation to the purpose and scheme of the act, and to each other, is so close that it is not to be supposed the Governor would approve of the one and veto the other. Again, the General Assembly, at the time of making the appropriations, could not know the amounts needed or required to first construct the roads and afterwards maintain them. The appropriations which constitute the State road and bridge fund are available to the State highway commission, which can make allotments from said fund to each county of the State as provided by the act, and the commission is required, in preparing vouchers for warrants, to designate the amount spent for construction and the amount spent for maintenance, and also show the location, as to county and division of the county, on which the same is to be used. This requirement is practicable and furnishes a record of the amount expended for each purpose and where used. We do not think the constitutional provision invoked was violated.

It is also insisted that sections 15a and 15b violate section 16 of article 5 of the constitution, in that they attempt to delegate legislative authority to the State highway commission. These sections require the State highway commission to secure certain data in the administration of the

act; but this is a mere ministerial duty and is not a delegation of legislative authority. We think this objection without merit.

It is further contended the act violates section 20 of article 4 of the constitution, which prohibits the State from paying, assuming or becoming responsible for the debts or liabilities of any public or other corporation, association or individual, and from loaning its credit for such purpose. What we have before said as to the relation of the State toward and its authority over its public highways we think a sufficient answer to this objection. The act does not require the State to pay or become responsible for the liabilities of or loan its credit in aid of any public corporation. It imposes no duty or liability upon the State which it has not the constitutional right to assume. While the State assumes the duty of paying one-half the cost of State aid roads upon condition that the county pays the other half, the State does not become responsible for the portion of the fund the county is required to provide and in no way pledges or loans its credit to aid the county in raising its portion of the money. The money appropriated by the State is for a public purpose, for the benefit of the people of the State, and not for any public corporation.

We have not attempted to take up and analyze every reason advanced by appellant in his argument in support of his contention that the act before us is unconstitutional, but from a consideration of the law and the objections made to it by appellant we are of opinion that it is not obnoxious to the constitution but is a valid enactment.

The decree of the circuit court is affirmed.

*Decree affirmed.*