(No. 14420.—Decree affirmed.)
AUGUSTUS S. PEABODY, Appellee, *vs.* ANDREW RUSSEL, Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed February 22, 1922.*

1. CONSTITUTIONAL LAW—*constitution requires legislative appropriations to specify purpose and amount.* Section 16 of article 5 of the constitution, as amended in 1884, clearly indicates that appropriations by the General Assembly shall specify both the object and purpose of the appropriation as well as the amount.

2. SAME—*appropriation of "reserve fund" for departments of State government in 1921 is unconstitutional.* The appropriation in 1921 of $500,000 to the Department of Finance "for reserve," to be apportioned among the executive, judicial and military departments of the State government by the director of finance, with the written approval of the Governor, violates section 16 of article 5 of the constitution, as said appropriation is not a distinct item but is a sum for general distribution, to be apportioned into items among a number of possible unspecified objects.

3. SAME—*power to specify object of appropriation cannot be delegated.* Section 16 of article 5 of the constitution requires the legislature to specify the purpose and amount of appropriations, and the legislature cannot, in an appropriation act, delegate to an administrative officer the specification of the objects and purposes and the determination of distinct items from a sum appropriated for general distribution.

4. SAME—*when legislative interpretation of constitutional provision should not be followed.* Legislative interpretation of a constitutional provision, as shown in statutes passed at different times, is entitled to no weight where there is no doubt that the proper construction of such provision is contrary to such interpretation.

5. SAME—*courts cannot refuse to enforce constitutional provisions because they are impracticable.* The fact that the provisions of the constitution concerning appropriations may require them to be too definite and specific to make the conduct of the State government practical and efficient does not authorize the courts to change the provisions or to refuse to enforce them.

STONE, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for appellants.

WALTER F. DODD, for appellee.

WERNER W. SCHROEDER, for *amici curiæ*.

Mr. JUSTICE CARTER delivered the opinion of the court:

This action was commenced by the presentation of a petition in the circuit court of Sangamon county for leave to file a bill for injunction in accordance with the provisions of sections 16 to 22 of chapter 102. (Hurd's Stat. 1919, pp. 2055-56.) That court granted such leave and this bill was thereafter filed. The defendants, who are appellants here, filed a general demurrer, which was overruled, and they having elected to abide by the demurrer, the court entered a decree for injunction as prayed in the bill, and from that decree the case has been brought by appeal to this court.

Appellee, Peabody, alleged in his bill that he is a resident, citizen and tax-payer of Cook county, having filed the bill for injunction in his own behalf and on behalf of all tax-payers who may desire to join therein. He alleged that the Fifty-second General Assembly, at its regular session in 1921, passed an act entitled "An act to provide for the ordinary and contingent expenses of the State government until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly," and that said act, except certain items vetoed by the Governor, was duly approved June 30 and went into effect July 1, 1921. (Laws of 1921, p. 83.) The bill further alleges that by the terms of that act an appropriation was made in the following language:

"(25) To the Department of Finance:

For reserve.........................$500,000.
To be apportioned between the executive, judicial
and military departments of the State govern-
ment and allotted as emergencies arise by the di-
rector of finance with the approval in writing of
the Governor."

The bill sets forth that section 16 of article 5 of the
Illinois constitution provides that "bills making appropri-
ations of money out of the treasury shall specify the objects
and purposes for which the same are made, and appropriate
to them respectively their several amounts in distinct items
and sections," and alleges that said appropriation to the
Department of Finance "for reserve" is unconstitutional
and void as in violation of the constitution, and particu-
larly the section just quoted, and prays that said appropri-
ation be held unconstitutional and void, and that a perpetual
injunction issue enjoining Andrew Russel, Auditor of Pub-
lic Accounts, from granting, issuing or signing any war-
rants pursuant to such appropriation, and that Edward E.
Miller, State Treasurer, be perpetually enjoined from coun-
tersigning, honoring or paying any such warrants.

In the brief filed by the Attorney General it is stated
that after the passage of the Omnibus Bill the Attorney
General advised the Auditor of Public Accounts that pay-
ment should not be made from said appropriation until the
constitutionality thereof should be determined by the courts,
and that opinion practically states that the appropriation is
unconstitutional.  On this question, when the bill in this
case was filed for an injunction in the circuit court of San-
gamon county, counsel for the Governor of the State and
the director of finance appeared in the circuit court and
asked leave to intervene and to file a brief for appellants,
the State Auditor and the State Treasurer.  This leave was
granted, and on the appeal to this court counsel for the
Governor and director of finance also asked leave to file a

302—8

brief in behalf of the appellants, and that leave was granted and briefs have been submitted by counsel for the Governor and director of finance.

The question has been argued in the briefs by both counsel for appellants and for appellee as to whether the appropriation here in controversy specifies an "object" or "purpose" and appropriates thereto the $500,000 in a "distinct item," as provided by section 16 of article 5 of the constitution. The language just referred to, relied on by counsel for appellee in his brief as making this appropriation unconstitutional and void, was placed in the constitution by an amendment adopted by the people in 1884, conferring what is generally known as the "item veto power of the Governor." As stated by this court in *Martens* v. *Brady,* 264 Ill. 178, on page 190: "The purpose of the constitutional provision here invoked is to enable the Governor, when passing on appropriation bills, to consider and act on the items of the appropriation separately." Even before this provision was inserted by the amendment of 1884 the constitution of 1870 contemplated that the purpose of appropriations should be specified, and provided in section 17 of article 4 that "no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." The framers of the amendment to section 16 of article 5 in 1884 undoubtedly had before them the broad language of section 13 of article 4, that "no act hereafter passed shall embrace more than one subject," and it would appear that they intended to use language clearly indicating that appropriations should specify both the object and purpose and the amount. It will be noted that section 25 of the Appropriation act here in question states that the $500,000 is "to be apportioned between the executive, judicial and military departments of the State government and allotted as emergencies arise by the director of finance with the approval in writing of the Governor." Manifestly, such an appropri-

ation has neither certainty as to the department by which the appropriation is to be used nor as to the purpose for which it is to be expended. Section 24 of the State Finance act (Laws of 1919, p. 951,) says: "The item 'reserve,' when used in an appropriation act, shall include expenditures for public purposes which were unforeseen by the General Assembly." It would appear from this definition that the statute would permit the director of finance, with the approval of the Governor, to employ this money for any public purpose within the general constitutional or statutory powers of the executive, judicial and military departments of the State government. There is no specification of the object and purpose in section 25 of the Appropriation act as to this $500,000, as required by the constitution.

It would appear to be argued by counsel for appellants that the appropriation here involved is one to be allotted and used by the several departments of the State government "as emergencies arise," and that "emergencies" constitute a specified "object and purpose" to which a distinct item has been appropriated, and that the word "emergency," properly construed, can only mean when a real emergency arises,—when an occurrence takes place in the operation of government which could not reasonably be anticipated by the legislature and was not provided for by the legislature and which requires speedy action. This court said in *People* v. *Brady*, 277 Ill. 124, on page 129: "That an appropriation can only be paid out of the treasury in payment of obligations incurred for the particular purposes specified in the appropriation was decided in *People* v. *Swigert,* 107 Ill. 494, where it was sought to compel the Auditor and Treasurer to pay over to the captain of a company, in a lump sum, the share of an appropriation allotted to that company, and there was no showing that any obligation of the State had been incurred and no bill of particulars or specification was presented. The law on that subject was repeated in *Fergus* v. *Russel,* 270 Ill. 304, where it was held

that an appropriation for a particular purpose can only be paid on the presentation of itemized vouchers showing that obligations have been incurred." In the same case the court, in referring to the statutory provision as to the State Board of Agriculture, said (p. 130): "This provision, if it were valid, does not apply to this case because the appropriations were made for specific purposes, and not to be expended for such purposes as in the opinion of the board would best advance the interests of agriculture, horticulture, manufactures and domestic arts. If the act did apply it would be in violation of the constitution, which provides that bills making appropriations shall specify their objects and purposes, and appropriate to them, respectively, the several sums in distinct items and sections. The General Assembly must determine to what objects and purposes money of the State shall be appropriated, and cannot bestow that power upon any person or board for the exercise of discretion of the donee as to the objects for which the money shall be expended." In *Fergus* v. *Russel, supra,* heretofore cited in *People* v. *Brady, supra,* the court said (p. 332): "Paragraph 26 of section 1 of the Omnibus Bill is as follows: 'To the State Treasurer such sums as may be necessary to refund the taxes on real estate sold or paid on error and for over-payment of collectors' accounts under laws governing such cases, to be paid out of proper funds.' The objection to this item is that no definite sum is appropriated. Paragraph 3 of section 16 of article 5 of the constitution is, in part, as follows: [Here giving the portion above quoted.] It will thus be seen that to make a valid appropriation a definite sum of money must be appropriated for the purpose specified."

It is manifest that the appropriation of $500,000 is not an item in the constitutional sense but is a sum for general distribution. The constitutional provision requires a definite amount for a definite object and purpose. In this appropriation there is no definite amount for a definite

object and purpose but a general amount, to be apportioned into items among a number of possible objects which are in no way specified, and this allotment or specification is necessary before the appropriation is effected.

We do not think anything said in *Mitchell* v. *Lowden,* 288 Ill. 327, relied on by counsel for *amici curiæ,* as to large appropriations for a specified amount to a given object, justifies the appropriation of $500,000 as set forth in the Appropriation act. It is clear from the reasoning in *Mitchell* v. *Lowden, supra,* and *People* v. *Brady, supra,* that the size of the appropriation as to a specified amount is not material if the item is otherwise proper. In our judgment a fair reading of the opinion in *Mitchell* v. *Lowden* tends to support the decision of the trial court with reference to this appropriation being contrary to the constitutional provisions. It is clear from the item of the Appropriation act objected to, that the appropriation itself is not a complete act of legislation but seeks to delegate to an administrative officer the specification of objects and purposes and the determination of distinct items therefor. The constitution expressly requires these acts to be performed by the General Assembly itself. (*People* v. *Board of Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 522; *Sheldon* v. *Hoyne,* 261 id. 222, and cases cited.) The reasoning of this court in *People* v. *Kane,* 288 Ill. 235, supports the same conclusion.

It would seem from a plain reading of the provisions of section 16 of article 5 of the constitution, as well as from the construction already put upon the provisions of the constitution by this court, that the Appropriation act in question, in attempting to appropriate, in section 25 thereof, $500,000 to be expended by the director of finance, on the approval of the Governor, is unconstitutional and must be held void.

It is argued at some length by counsel for *amici curiæ* that appropriations similar to the one here in question have

been made by the legislature from time to time for many years past, the sums appropriated varying in amount from $3000 to $4000, down to 1919, when a sum was appropriated and expended equal to the one here in question. The legislative construction placed upon a doubtful constitutional provision is entitled to weight, but when there is no doubt as to the proper construction of the constitutional provision such legislative construction is entitled to little or no weight. In the first volume of our decisions, *Phœbe* v. *Jay,* Breese, 268, in speaking of the authority of the legislature to act, this court said (p. 271): "The constitution is their commission and they must act within the pale of their authority, and all their acts contrary or in violation of the constitutional charter are void. If they have no power to pass an act, any number of repetitions of unconstitutional acts or acts beyond the pale of their authority can never make the original act valid." This same doctrine was quoted with approval by this court on this subject in *Burke* v. *Snively,* 208 Ill. 328. Of course, it is unnecessary for us to discuss or decide whether the former appropriations that have been expended under the authority of the various departments of the State government were constitutional or not. It is clear that if these moneys in former years were expended contrary to the constitution, under the authorities just cited it would furnish no justifiable reason for again violating the plain provisions of the constitution.

Counsel for *amici curiæ* also argues at length that under the decisions of this court similar general funds for emergency or contingent expenses have in effect been held constitutional under the provisions of the statute in such cases as *People* v. *Illinois Central Railroad Co.* 237 Ill. 324, *People* v. *Cairo, Vincennes and Chicago Railway Co.* 247 id. 360, and *People* v. *Chicago, Burlington and Quincy Railroad Co.* 253 id. 100. It is obvious from an examination of the respective statutes construed that the language under

construction in those cases is not as specific as the constitutional provision here in question. (See Hurd's Stat. 1917, chap. 24, sec. 111; chap. 120, sec. 121; chap. 139, sec. 125.) In this case the court has under construction a constitutional provision and not the provisions of a statute such as govern appropriations for villages, cities, towns and counties, and what is said in those cases, in our judgment, does not in any way tend to support the arguments of counsel for *amici curiæ* that the appropriation here in question should on the reasoning of those cases be held valid.

Neither do we think the argument of counsel for *amici curiæ* should control here because it seems absolutely necessary for the proper administration of the State government that a large latitude in regard to appropriations should be permitted in order to care for the emergencies that necessarily arise from time to time. The answer of this court to this argument is found in *Knickerbocker* v. *People,* 102 Ill. 218, where this court said (p. 220): "Counsel for appellant have pressed upon the attention of the court, with much earnestness and in strong terms, the supposed inconveniences and great hardships that will probably result from holding the act in question unconstitutional as a reason why such a construction should not be given to it. The argument of *ab inconvenienti* should have but little weight, if any, in solving the question before us. Considerations of this character address themselves to the official duty and conduct of the court rather than to the question in hand. While they afford the strongest reasons why the court should act with great caution and mature deliberation in the consideration of the case, yet they do not throw a particle of light upon the vital question upon which it depends. It is not claimed that considerations of this character can have any controlling influence in a case where the act of the legislature is clearly unconstitutional, but it is urged they may be looked to in doubtful cases. This view has the sanction of authority,

yet it is rather plausible than forcible, for where an act of the legislature is manifestly unconstitutional it is the duty of courts to so hold, however disastrous the consequences may be. On the other hand, if there is a reasonable doubt as to its unconstitutionality the act should be sustained, whether any evil consequences would flow from holding it invalid or not." This reasoning of the court, rendered in a decision construing the constitution more than forty years ago, is a complete answer to the argument of counsel as to the inconvenience that may come to the State government from holding this appropriation of $500,000 invalid. It has been held by the courts of last resort in other States where somewhat similar provisions are in force, that the provisions requiring the object of the appropriation to be specified and definite should be enforced. (*Dickinson* v. *Clibourn,* 125 Ark. 101; *State* v. *Seibert,* 99 Mo. 122; *Menefee* v. *Askew,* 25 Okla. 623; *People* v. *Kings County,* 52 N. Y. 556.) In this last case the court said (p. 569): "It is not difficult, and ought not to be regarded as an unreasonable or onerous requirement, to state the 'object' to which an appropriation is to be applied, or the 'single work or object' for which it is proposed to create a State debt, or the 'object' for which a tax is deemed necessary and to which it is to be applied."

In our judgment, if this appropriation for the benefit of either one, two or three departments of the State government, without specifying the definite purpose or object of the appropriation, can be sustained, then such appropriations for every branch of the State government just as indefinite must be sustained, and we see no legal reason why if $500,000 could be thus appropriated, even larger sums might not be appropriated to various State departments in the same indefinite and uncertain manner. We deem the argument of no force that similar appropriations have been heretofore made and wisely expended by the Governor and other State officials without any serious harm to the pub-

lic and therefore the present and future Governors of the
State and State officials can be rightly trusted to continue
to protect the interests of the public. Assuming that all
this may be accepted as true, yet it furnishes no justifi-
cation for disregarding the plain mandates of the written
constitution. If the provisions of the constitution as to ap-
propriations require them to be too definite and specific to
make the conduct of the State government practical and
efficient, it is not for the courts to change these specific
provisions because of the impracticability and inconvenience
of enforcing the constitution. The courts must enforce the
constitution as adopted by the people, and if the constitu-
tion requires a change it should be done in the regular man-
ner. It may well be said that there are worse conditions
than not having public officials able to carry out conven-
iently and satisfactorily the emergency work that may be
required from time to time, without a specific appropria-
tion. In a constitutional government no injury can come
to a State greater than the destruction of the safeguards
provided in its constitution.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

The opinion adopted in this case holds the appropria-
tion to the Department of Finance, to be allotted as emer-
gencies arise by the director of finance, with the approval
in writing of the Governor, to be a violation of section 16
of article 5 of the constitution, giving to the Governor
power to veto any one or more of the items or sections con-
tained in any bill making appropriations for money out of
the treasury. This appears to be contrary to the purpose
and intent of the amendment of 1884, by which the pro-
vision was incorporated in the constitution, and also con-
trary to the rule that courts must presume the words of

the constitution to have been employed in their natural and ordinary meaning.

In construing a constitutional provision it is important to consider the object intended to be accomplished and the mischief designed to be remedied. (Cooley's Const. Lim.— 7th ed.—100.) The constitution, when adopted in 1870, by section 17 of article 4, vesting the legislative power in a General Assembly and declaring limitations upon the exercise of the power, provided that no money should be drawn from the treasury except in pursuance of an appropriation made by law. There was no provision that appropriations should be in distinct items or sections, and appropriations were frequently not made so as to enable the Governor to exercise the veto power. Gov. Cullom, in his message in January, 1883, recommended that section 16 of article 5 should be amended so that the veto power of the Governor should be enlarged so as to give the Governor the power of partial veto by items or sections. The Governor called attention to the fact that Governors of many States possessed that power and that mayors had been given the power in 1875. In compliance with the recommendation of the Governor, a resolution for the amendment to the constitution giving the Governor power to veto distinct items or sections was submitted to the people and adopted. It was not in article 4, pertaining to the legislative department, which remained unchanged, but in article 5, concerning the executive department, and in that section which related to the veto power. The only purpose of the amendment was that appropriations should be made in such separate items as would enable the Governor to exercise his veto power, and it seems to me clear that the appropriation in question was of such a character as to meet the purpose of the amendment. It specifies that the reserve is to be apportioned between the executive, judicial and military departments of the government, and allotted, as emergencies arise, by the director of finance, with the

approval in writing of the Governor; and this is surely sufficiently specific to enable the Governor to determine whether he would approve of the appropriation or exercise his power to disapprove of it.

Disregarding, however, the history of the amendment, its evident purpose and the article amended, it seems to me that the appropriation did specify the object and purpose for which it was made and appropriated the amount in a distinct item and section. It has been the constant practice of the legislature to make appropriations for contingencies which may arise between sessions of the legislature, and the power has not only never been questioned but is not now questioned. Such appropriations are made to meet expenses that may or may not occur within the scope of the department to which the appropriation is made. This appropriation is more specific in limiting the expenditure to emergencies which may arise. An emergency is "a sudden or unexpected occurrence or condition calling for immediate action." (Standard Dict.) It is "an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency." (Webster's Dict.) It is "any event or occasional combination of circumstances which calls for immediate action or remedy; an unforeseen occurrence; a combination of circumstances which calls for immediate action or remedy; a sudden or unexpected occasion or action; a sudden or unexpected happening; any case of casualty or unavoidable accident." (20 Corpus Juris, 499.) It is "some unforeseen occasion, condition or pressing necessity that requires immediate action; a sudden or unexpected happening or occasion calling for immediate action." (Century Dict.) It is not only more specific than an appropriation for contingencies, but there are practical considerations which can not be overlooked in interpreting the constitution. The State owns and operates twenty-seven different establishments in different parts of the State, including State hospitals for

the insane, feeble-minded and blind, the penitentiaries, reformatory and other similar institutions, and the State government is charged with the maintenance of peace and order within its bounds. Emergencies may arise at any time calling for immediate action, which will be the only effective remedy. In 1920 landslides were endangering the State buildings at the Chester State Hospital, and money was taken from such an appropriation as this to build retaining walls and preserve and protect the State buildings. It would be nothing less than a calamity if no appropriation could be made for that specific purpose until the legislature should be called in special session. Riots are liable to occur, and have occurred, calling for immediate action in suppressing the same, and on two occasions property of the State has been destroyed by windstorms, where there was a necessity for immediate restoration to such an extent as to answer the purpose of the institution. Making an appropriation for such purposes is only the exercise of ordinary prudence and foresight.

As has been stated, there has never been, and is not now, any claim that appropriations for contingencies may not be made without specifying the particular purpose of the appropriation. In the same appropriation bill in which this appropriation was made there was an appropriation to the Department of Public Welfare for contingencies, of $100,000; to the Governor, $40,000; to the Department of Public Works and Buildings, $20,000; to the Secretary of State, $15,000; to the Division of Poultry Husbandry, $5000, and numerous other like appropriations to the various departments of the State government, which were approved by the Governor, besides appropriations vetoed, not because they violated any constitutional provision but because they did not meet with the approval of the Governor. To recognize the validity of these appropriations, more indefinite than the one in question, which appropriated a definite sum of money for a specific purpose with no discretion

as to the purpose, does not appear to me to be justified or founded in reason.

It is true that the amendment must be construed as it appears to have been understood by the people who adopted it. It was not only adopted to meet the objection of a want of veto power, but I do not see how it can be said that the people understood the amendment as prohibiting such an appropriation as this. There are provisions in the statutes requiring appropriations of counties, cities, villages and towns to specify the purposes of the appropriations, and it has been the general practice to make appropriations for contingent expenses or other similar designation. The court has sustained such appropriations as in compliance with the statute where the amount is reasonable. (*People* v. *Cairo, Vincennes and Chicago Railway Co.* 237 Ill. 312; *People* v. *Chicago and Eastern Illinois Railroad Co.* 249 id. 549; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 253 id. 100.) These local governments cover the entire State, and the people must have understood that such appropriations could be made. As to such local governments it is within the power of the court to determine whether the amount appropriated is reasonable, but the court has no power to interfere with, regulate or control the legislative discretion as to the amount of an appropriation. As a matter of fact, the legislature, at the session when this appropriation was made, appropriated about $170,000,000, of which the appropriation in question was but a small portion, but if it were large the court would have no right to set it aside for that reason.

Mr. CHIEF JUSTICE STONE, also dissenting:

I concur in the above dissent. A fund such as is here appropriated cannot be made available for any of the purposes for which specific appropriations have been made. To sanction such use would be, in effect, to increase the appropriations made for the purposes specified. It is impossible,

however, to foresee and provide for all emergencies which may arise in the discharge of the functions of State government, just as such contingencies cannot be foreseen in the administration of the government of municipalities. There appears to be no good reason for a different rule as applied to the wider functions of the State. It was clearly held in *People* v. *Cairo, Vincennes and Chicago Railway Co.* 247 Ill. 360, which holding has been approved in later cases, that such appropriations may be made for the reason that "it is practically impossible to always provide in advance for incidental expenses that will arise during the year." There appears to have been no objection to the amount appropriated in this case. The reason for approving such an appropriation in the case of a municipality applies with equal if not greater force in the case of the State.