(No. 34362.—

STEPHEN TURKOVICH *et al.,* Appellants, *vs.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS *et al.,* Appellees.

*Opinion filed May 23, 1957.*

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellants.

LATHAM CASTLE, Attorney General, WALTER E. LINDGREN, and WILLIAM C. WINES, all of Springfield, RALPH F. LESEMANN, RUSSELL N. SULLIVAN, RUBIN G. COHN, and JOHN J. TEMPLIN, all of Urbana, and ALBERT E. JENNER, JR., and PRENTICE H. MARSHALL, both of Chicago, (JOHN S. RENDELMAN, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a taxpayers' suit by Stephen and Betty Turkovich and Dahlen's Drug Stores, Inc., to enjoin the Board of Trustees of the University of Illinois from spending State funds for the construction, equipment and operation of a television station. The Auditor of Public Accounts and State Treasurer are joined as defendants, and plaintiffs seek to restrain them from paying out funds from the State Treasury for such purposes. Plaintiffs appeal from the decree of the circuit court of Sangamon County dismissing the complaint for want of equity. This court has jurisdiction since the constitutionality of a statute is involved and the case relates to the public revenue.

Plaintiffs contend that there is no valid appropriation for the purpose of constructing and operating a television station and that disbursement of funds under the appropriation acts involved is in violation of section 17, article IV, of the Illinois constitution. They further assert that if such

acts be construed to permit such expenditure, then their failure to specify the purposes for which the appropriations were made violates section 16, article V, and section 1, article IV, of said constitution.

Before going into the merits, we must consider the defendant trustees' contention that this is not a *bona fide* taxpayers' suit. It is charged that the Illinois Broadcasters Association, not a taxpayer, is the real party in interest and that the plaintiffs are only nominal parties.

This suit was instituted by Stephen Turkovich, a restaurant operator. Later his wife Betty Turkovich, who was a partner in his business, was added as a plaintiff. Subsequently, after issue had been joined save for a pending motion to strike portions of the answer, the corporate plaintiff joined the two individual plaintiffs.

The only pertinent testimony in the record on this point is that of Turkovich and one Rollin G. Engman, president and general manager of Dahlen's Drug Stores, Inc. Engman testified that he had read of the Turkovich suit; that he was in sympathy with the objective of same; that he discussed it with one Johnson who was in the television and broadcasting business and was also a stockholder and director of his (Engman's) corporation; that Johnson inquired if his corporation would like to go along with Turkovich in the suit; that witness signified his willingness to do so and did join as a plaintiff. He further testified that his board of directors authorized him to proceed (which is borne out by the corporate records) and that he retained the same counsel as Turkovich at his corporation's expense.

The testimony of Turkovich was of much the same import. After reading of the proposed construction in the public press, he asked one Angus Pfaff what he thought of the University's proposal. Pfaff, who was a member of the Broadcasters Association, agreed that if Turkovich would file a taxpayer's suit the association would pay the costs and attorneys' fees.

The argument on this point by counsel for the Board of Trustees is persuasive. The Illinois Broadcasters Association violently opposes the operation of a University television station. Its representatives attempted to get adverse legislation passed, appeared before the defendant board's trustees in opposition and exerted influence upon the plaintiffs to file this suit. Its interest is apparent since the expenses of litigation are being borne for Turkovich. On the other hand, it is conceded that the plaintiffs are taxpayers. The testimony of Turkovich and Engman to the effect that they are deeply interested, the latter to the extent of spending his company's funds for the litigation, is undisputed.

It is an established rule in this jurisdiction that a taxpayer can enjoin the misuse of public funds, based upon taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by misappropriation thereof. *Fergus* v. *Russel,* 270 Ill. 304; *Krebs* v. *Thompson,* 387 Ill. 471; *Barco Mfg. Co.* v. *Wright,* 10 Ill.2d 157.

We have held that where the filing of a suit is for the exclusive benefit of an individual or corporation, the courts may go behind the parties on the face of the record. (*Watson* v. *LeGrand Roller Skating Rink Co.* 177 Ill. 203; *People ex rel. Moloney* v. *General Electric Railway Co.* 172 Ill. 129.) Here, the undisputed evidence is that the plaintiffs are interested as individual taxpayers. If funds are being wrongfully appropriated and spent as charged, this suit will not only profit the Broadcasters Association but will benefit the plaintiffs and all other Illinois taxpayers. Plaintiffs' motives cannot be questioned to the extent of dismissing their suit merely because their feelings on the subject of a University television station coincide with the desires of the aggressive Association. We are of the opinion that plaintiffs are entitled to be heard upon the merits of this cause.

In the trial court plaintiffs contended that, wholly apart from the reach and validity of the appropriation acts in question, the University is without legal power and authority to maintain and operate an educational television station. The point is argued only inferentially on this appeal when counsel states that there is no specific statutory authorization for the expenditure of funds for television purposes. For a better understanding of this problem, some historical background will be helpful.

The Board of Trustees was empowered to administer the University of Illinois by an act of the General Assembly passed in 1867. (Ill. Rev. Stat. 1953, chap. 144, pars. 22 *et seq.*) By section 7 thereof it was authorized to provide requisite buildings, apparatus and conveniences, to appoint professors and instructors and to teach in the most thorough manner such branches of learning as are related to agriculture and the mechanical arts, without excluding other scientific studies.

The Board of Trustees has, within such authorization, greatly expanded the facilities of the University. It has constructed and maintains the requisite buildings, apparatus and conveniences for and gives instruction in more than 2600 courses taught in 15 colleges, 5 schools, 2 divisions, 3 institutes and 2 Reserve Officers Training Corps, on three campuses. In addition, it maintains libraries, museums, hospitals, clinics, institutes, research programs, extension services, recreational facilities and a radio station.

A School of Journalism and Communications was established in 1927, pursuant to an act of the General Assembly. Three major curricula are offered by this school: journalism, advertising, and radio-television. Approximately one third of the student body in that school is enrolled in the latter curriculum.

The Board of Trustees in 1953 obtained a permit from the Federal Communications Commission to construct and

operate a noncommercial television station. With the aid of gifts, including a transmitter, a television station was constructed which consisted of the erection of an antenna, the partitioning into rooms of space in the west hall of Memorial Stadium and the installation therein of the transmitting equipment. The station went on the air August 1, 1955, and has continually operated since. The Trustees allocated $24,000 for original construction and maintenance.

Professor Schooley, who is director and in charge of radio and television broadcasting for the University, testified that the station was an experiment to see what could be done in program operations for a year or two. He indicated the desirability of expansion and relocation after the experimentation is completed.

According to the record the purposes of the University's television station are to train students to enter the field of communication and broadcasting; to give instruction for University credit; to carry on research in mass communication; to disseminate the results of research in all fields of learning at the University; to experiment in program planning and technique and to employ the medium for the education of the public at all levels.

There is nothing unusual in the University's power, in the objectives to be obtained, or the cost thereof, in the construction and operation of a television station. We take judicial notice of the fact that our great universities, through experimentation and research in many scientific fields totally beyond the comprehension of normal man, are the prime source of discoveries for the betterment of mankind. How then can we say that the University of Illinois should be restricted to specific authorizations in its proposed research and experimentation such as this?

The Board of Trustees has, by the statute creating the University, the power and authority to do everything necessary in the management, operating and administration of the University, including any necessary or incidental powers

in the furtherance of the corporate purposes. *People ex rel. Board of Trustees* v. *Barrett*, 382 Ill. 321.

We are of the opinion that, aside from the question of the proper appropriation and use of State funds for the purpose, the construction and maintenance of a television station is well within the powers of the University without any additional statutory enactment upon the subject.

We now turn to the contention that there was no valid appropriation of State funds for the construction and operation of a television station. It is argued that the act making appropriations to the Board of Trustees to meet the ordinary and contingent expenses of the University of Illinois is not broad enough to permit the expenditure complained of. Apparently, it is plaintiffs' theory that activities of the University such as this must be particularized in the appropriation act or by separate enabling legislation.

There are two appropriation acts involved. The first pleaded was the 1953 act, which covered the biennium from 1953 to 1955. Subsequently, a supplemental complaint was filed setting up the 1955 act covering the next biennium. They are similar except for amounts, and our comments will be restricted to the 1955 act to avoid confusion.

Under section 18 of article IV of the constitution the General Assembly is enjoined to provide "appropriations necessary for the ordinary and contingent expenses of the government * * *." The legislature has interpreted that constitutional mandate to mean that its appropriation for the ordinary and contingent expenses of the University need only be itemized by categories; *i.e.,* personal services (salaries), travel, contractual services, commodities, equipment, permanent improvements, contingencies and the like. The Appropriation Act in question makes line item appropriations in part as follows:

> "For Personal Services      $55,970,800
>    For Travel      425,000
>    For Contractual Services      7,300,000

| For Commodities | 4,300,000 |
| For Equipment | 1,900,000 |
| For Permanent Improvements | 350,000 |
| For Contingencies | 4,130,000" |

The Board of Trustees of the University of Illinois is a public corporation created by the General Assembly as an instrumentality or agency of the State government to operate, administer and manage the University as a public institution of higher learning and education. (*Thomas* v. *Board of Trustees of Illinois Industrial University*, 71 Ill. 310; *People ex rel. Board of Trustees* v. *Barrett*, 382 Ill. 321; *Elliott* v. *University of Illinois*, 365 Ill. 338.) As such, it is entitled to appropriations to operate and administer the University just as is any other branch or agency of the State government.

Similar appropriation acts for the University and many other branches and agencies of the State have been used continuously since the enactment of the Civil Administrative Code of 1917, (Ill. Rev. Stat. 1955, chap. 127, pars. 1 *et seq.,*) and the State Finance Act of 1919 (Ill. Rev. Stat. 1955, chap. 127, pars. 137 *et seq.*) It cannot reasonably be said that expenditures for purposes such as those complained of here would not have come to the attention of, and been curbed by, the legislature over the years if the funds appropriated were used for purposes not contemplated by that body. The General Assembly cannot be expected to allocate funds to each of the myriad activities of the University and thereby practically substitute itself for the Board of Trustees in the management thereof.

We have heretofore held that the construction and operation of a television station is within the powers delegated to the Board of Trustees. It follows that the several appropriation acts included funds for the construction, maintenance and operation of the television station as a part of the ordinary and contingent expenses of the Uni-

versity, and the Trustees had the authority to pay the cost thereof from such appropriations.

The final question is whether the Appropriation Act is violative of section 16 of article V of the constitution by failing to specify the object or purpose for which the appropriations were made, and an unlawful delegation of legislative power in violation of section 1 of article IV of the constitution.

Plaintiffs make the point that the Board of Trustees in its internal budget makes a separate allocation for television, but that it is not carried over into the Appropriation Act. A review of budgeting and appropriating procedure, under the Civil Administrative Code and State Finance Act, indicates that such a statement is misleading.

The various departments, divisions and colleges submit their estimated needs to the University Budget Committee. The estimates are then correlated and a report made to the President of the University who, in turn, makes his budget recommendation to the Board of Trustees. The Board then submits the University's budget, as approved by it, to the State Director of Finance, accompanied by a written statement explaining each item of appropriation requested. The University's internal budget is published as "The University Bulletin" and for the year 1954-1955, consisted of 272 pages. After hearings and revisions the Governor submits the budget to the General Assembly as a division of his biennial executive budget recommendations. An appropriation act, in the form outlined above, is then passed.

The several line items in the Appropriation Act are the totals of the needs in each category of the various departments, divisions and colleges. For example, the salaries of the professors in the College of Law and those in the College of Engineering are paid out of the line item for "Personal Services," and the equipment needed by both colleges is purchased out of the line item for "Equipment." This

practice has been followed by the General Assembly for many years.

The impracticability of detailing funds for the many activities and functions of the University in the Appropriation Act is readily apparent. If, as plaintiffs' counsel argues, a $24,000 annual expenditure out of a biennial appropriation in excess of $82,000,000 is required, then practically every proposed expenditure would have to be itemized. Television cannot be singled out for special treatment merely because it is relatively new. It is one of the many activities incident to the management and operation of the University included in the single objective of maintaining an institution of higher learning.

We have been called upon to test various appropriation statutes with regard to the itemization requirements of section 16 of article V of the constitution. (*Mitchell* v. *Lowden,* 288 Ill. 327; *Martens* v. *Brady,* 264 Ill. 178; *Lund* v. *Horner,* 375 Ill. 303; *Owens* v. *Green,* 400 Ill. 380.). The rationale of the foregoing cases is that the statutes appropriating funds in a lump sum for a single general purpose and without further itemization do not contravene the itemization provisions of said section 16 merely because the single general purpose may be subdivided into various details of the object and purpose, where it appears the various details are embraced within and reasonably related to the general purpose.

In the case of *People ex rel. Ammann* v. *Wabash Railroad Co.* 391 Ill. 200, where the objection was to a lump sum item in a tax levy for "Public Library Tax..$42,000" we held such levy was not void and said at page 221: "In the present case it was never intended that the city should control the detailed itemization of expenditures for library purposes. The statute provides that the library board of directors have exclusive control of all moneys collected for such library. The source of information as to the separate

items can be found by the taxpayer in the records of the library board. The levy for 'Public Library Tax' states a single general purpose, and we believe it to be sufficient to include appropriate expenditures even though there be several items."

Plaintiffs quote at length from, and place considerable reliance on, the case of *Peabody* v. *Russel*, 302 Ill. 111. There a taxpayer filed suit to enjoin expenditure from the following appropriation: "(25) To the Department of Finance: For reserve....$500,000. To be apportioned between the executive, judicial and military departments of the State government and allotted as emergencies arise by the director of finance with the approval in writing of the Governor." The holding in that case properly was that it did violate the constitutional provision. The appropriation was not, as here, for a single purpose, but the designated officials could authorize expenditure to any of three branches of government.

We have carefully considered *People ex rel. State Board of Agriculture* v. *Brady*, 277 Ill. 124, and other cases referred to by plaintiffs' counsel and find them distinguishable from the present case.

Plaintiffs do not pursue the charge of unlawful delegation of power other than in connection with their other charge of unconstitutionality. If the appropriation act meets constitutional requirements with respect to itemization, and in our opinion it does, then there is no unconstitutional delegation of legislative power to the Board of Trustees in their expenditure of funds for the purposes for which such funds were appropriated. The discretion granted to the Board of Trustees is but a ministerial discretion rather than a legislative discretion. *Reif* v. *Barrett*, 355 Ill. 104; *Owens* v. *Green*, 400 Ill. 380.

In our opinion no constitutional provisions have been violated in the construction and operation of the University

television station, nor is the appropriation and expenditure of funds therefor. The decree of the circuit court of Sangamon County is correct, and it is hereby affirmed.

*Decree affirmed.*