State, ex rel. Squires, v. Wallichs.

THE STATE OF NEBRASKA, EX REL. WILLIAM P. SQUIRES, v. JOHN WALLICHS, AUDITOR OF PUBLIC ACCOUNTS.

1. **Legislature:** CLERKS TO COMMITTEES. There is no law in this state authorizing a standing committee of either house of the legislature to employ a clerk, therefore a voucher for services so rendered, duly signed by the officers of the senate, will not authorize the auditor to draw his warrant for the amount so certified.

2. ———: ———. A clerk rendering services to two committees is not entitled to double compensation therefor.

ORIGINAL application for mandamus.

*Brown & Ryan Brothers,* for the relator.

*Isaac Powers, Jr., Attorney-General,* for the respondent.

MAXWELL, J.

This is an application for a writ of mandamus to compel the state auditor to draw his warrant in favor of the relator upon the following voucher:

"Legislative Voucher, 18th Session.

"The State of Nebraska,

"To W. P. Squires, Dr.

"For services as clerk judiciary from 2d day of Jan. to 27th day of Feb., 1883.

"61 days, at $3 per day.............................$183 00
"Mileage 100 miles, at 10 cents per mile........... 10 00

"Total....................................$193 00
"Deduct and drawn.................................. 60 00

"Balance due ...............................$133 00
"I hereby certify that the above account is correct and just.

"(Signed)               ALFRED W. AGEE,
"Attest:                *President of the Senate.*
"GEO. L. BROWN,
"*Secretary of the Senate.*"

Upon presentation of the voucher to the defendant, he refused to recognize the right of the relator to compensation thereon because he had already drawn the sum of $243 as clerk of the committee on privileges and elections for the same time for which he rendered services as clerk of the judiciary committee. It is admitted that the relator was employed under a resolution of the senate authorizing each committee thereof to employ such clerks as it deemed necessary for the transaction of its business, and that the relator served for the time stated under such employment. Did the committee thus have authority to employ clerks?

Sec. 4, Art. III. of the constitution, reads as follows: "The terms of office of members of the legislature shall be two years, and they shall each receive for their *services* three dollars for each day's attendance during the session, and ten cents for every mile they shall travel in going to and returning from the place of meeting of the legislature on the most usual route: Provided, however, That they shall not receive pay for more than forty days at any one session; and neither members of the legislature nor employees shall receive any pay or perquisites other than their per diem and mileage."

Sec. 2 of chapter 48 of the Compiled Statutes, is as follows: "That the officers and employees of the senate shall consist of a president, secretary, assistant secretary, sergeant-at-arms, doorkeeper, enrolling clerk, engrossing clerk, chaplain, and one page."

Sec. 12 provides that: "The officers and employees of the house of representatives shall consist of a speaker, chief clerk, assistant clerk, sergeant-at-arms, doorkeeper, enrolling clerk, engrossing clerk, chaplain, and two pages."

Section 13 provides that: "There shall be paid to each of the several officers and employees named in this act, for the official services rendered by them under the provisions of this act, the following sums and no more: The president of the senate and speaker of the house of representatives

shall each be entitled to receive the sum of three dollars per day; the secretary and chief clerk, the sum of four dollars per day; the assistant clerks, the sum of four dollars per day; the sergeant-at-arms, the sum of three dollars per day; the doorkeeper, the sum of three dollars per day; the chaplains, the sum of three dollars per day; and the pages, the sum of one dollar and fifty cents per day; enrolling and engrossing clerks, three dollars per day."

Section 14 provides that: "It shall be the duty of the president of the senate and speaker of the house of representatives to preside over their respective houses, to keep and maintain order during the sessions thereof, and to do and perform the duties devolving on them by general parliamentary usage and the rules adopted by the two houses. It shall be the duty of the chief clerk of the house of representatives and the secretary of the senate to attend the sessions of the respective houses, to call the rolls, read the journals, bills, memorials, resolutions, petitions, and all other papers or documents necessary to be read in either house, to keep a correct journal of the proceedings in each house, and to do and perform such other duties as may be imposed upon them by the two houses, or either of them. The assistant clerk and assistant secretary shall be under the control and direction of the chief clerk and secretary respectively, and shall assist them in the proper discharge of their duties, and shall do and perform such other services as may be directed by the two houses or either of them. It shall be the duty of the sergeant-at-arms to enforce the attendance of absent members, when directed properly so to do, to arrest all members or other persons when lawfully authorized so to do, to keep and preserve order during the session of each house, to convey to the post-office the mail matter for the said members, and to receive from the said office the mail matter for the said members, and to deliver the same to them on each morning of the session; to obey and enforce the orders of the presiding

officers, and to do and perform such other duties as may be enjoined on them by law and the respective houses. It shall be the duty of the doorkeepers to prepare and keep in order the senate chamber and hall of the house, including cleaning and warming the same; to attend to and keep closed the door and bar of the respective houses, unless otherwise directed by the presiding officers thereof; and to do and perform such other duties as may be enjoined on them by either house. It shall be the duty of the engrossing clerk to correctly engross such bills as may be required to be engrossed by the committee on engrossed and enrolled bills, and to perform such other duties as may be required by either house. It shall be the duty of the enrolling clerk to correctly and neatly enroll all such bills as may be placed in his hands therefor, and to perform such other duties as may be enjoined on him by either house. It shall be the duty of the chaplains to open the sessions of each house with prayer, and to perform such other duties as may be imposed upon them. And it shall be the duty of the pages to act under and as directed by the presiding officers of the respective houses. It shall also be the duty of the sergeant-at-arms to procure a national flag and to place the same on the top of the capitol building, there to be kept during the time each or either of the two houses shall be in session, and after the adjournment of the two houses the said flag shall be taken down and kept down until the opening of the session of one of the two houses."

It will be seen that the constitution and statute fix the number of officers and employees of the legislature and provide what their duties shall be and the amount of compensation. It will not be claimed that without any additional legislation either house can employ clerks of committees and direct their payment out of the public treasury. The legislature, although the law making power, is itself regulated and controlled by law. Therefore, if additional employees are desired, the law must be so framed as to authorize their employment.

But it is said that such authority is found in section 2, chapter 101 of the 18th session laws, 1883, which is as follows: "The auditor of public accounts is hereby authorized and required, upon presentation of the certificate of the lieutenant-governor or speaker of the house of representatives, stating that the party mentioned in said certificate is entitled to compensation as per diem and mileage to the amount allowed by law, to draw his warrant on the general fund for the amount so certified to be due; provided, the said amount as certified shall, after examination and adjustment by the auditor of public accounts, and approval thereof by the secretary of state, be found to be correct."

It is claimed on the part of the relator that the section above quoted excepts from review by the auditor all claims expressly required by law to be audited and settled by other officers and persons, and that as the officers of the senate have certified to the correctness of the account, the approval of the auditor is merely formal.

Sec. 22, Art. III. of the constitution provides that: "No allowance shall be made for the incidental expenses of any state officer, except the same be made by general appropriation, and upon an account specifying each item. No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon, and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution. The auditor shall, within sixty days after the adjournment of each session of the legislature, prepare and publish a full statement of all moneys expended at such session, specifying the amount of each item, and to whom and for what paid."

Section 9 provides that bills making appropriations for the pay of all members and officers of the legislature, and

for the salaries of the officers of the government, shall contain no other provision.

Section 9, Art. IX., requires the legislature to provide that *all* claims upon the treasury shall be examined and *adjusted* by the auditor and approved by the secretary of state. Construing these provisions together, it is very clear that the voucher of the officers of the senate will not authorize the auditor to draw a warrant in favor of a party unless the claim is authorized by law. Thus, the compensation of members is fixed at $3 per day. Now suppose the legislature made an appropriation for the payment of articles to be donated to the members in addition to the compensation provided for in the constitution, could the auditor be compelled to draw his warrant for the articles so donated? That he could not will readily be seen, because by the act of drawing his warrant he in effect certifies that the claim is authorized by law. The law imposes upon him the duty of examining claims and makes him responsible for warrants improperly drawn, and in cases of doubt he should refuse to act unless the claim is adjudged valid.

In the case under consideration, he properly refused to draw the warrant sought, as, even if the claim is valid, the relator has already drawn $243 as clerk of another committee for services rendered during the same time that the alleged services in this case were rendered. These services, whatever they were, were supposed to be rendered to the state and not to the committee, and the state has already more than paid the relator for the same. There is no statute fixing the pay of clerks of committees or authorizing them to receive three dollars or any sum per day. The act approved Jan. 26th, 1883, "To provide for the payment of officers, members, and employees of the 18th session of the legislature," merely authorizes the payment of such employees whose compensation is fixed by law. The certificate of the presiding officer of either house stating that the party mentioned "is entitled to compensa-

tion as per diem and mileage to the amount allowed by law," does not authorize the auditor to draw a warrant for any sum whatever, unless the statute has fixed the amount of such compensation, which in the case under consideration it is clear had not been done.

A person accepting an election to either house of the legislature impliedly pledges himself to devote his time and services during the session to the interests of the state. The duties are of such a nature that they cannot be performed by proxy. The members are chosen because of their supposed fitness for the position and their knowledge of the wants of the people of the state, and are supposed to represent their views in the passage of bills. These services must be personally performed by the members; and clerks of standing committees of the legislature are unknown to our law. And until such law is enacted there is no authority either to employ such clerks, or to pay for their services. It follows that the writ must be denied and the proceedings dismissed.

JUDGMENT ACCORDINGLY.