# Hollinger *v.* King et al., Appellants.

*Constitutional law — Amendments — Validity of amendment— Amendment of article IX, section 4, of the Constitution.*

1. After a constitutional amendment has been finally approved by the people, it cannot be attacked for any reason.

2. The amendment of article IX, section 4, of the Constitution (P. L. 1921, p. 1238) is an unimpeachable part of the Constitution of Pennsylvania.

*Constitutional law—Public debt—Issuing of bonds—Purpose of loan—Article IX, section 5, of the Constitution—Act of June 6, 1923, P. L. 494.*

3. The Act of June 6, 1923, P. L. 494, entitled "An Act authorizing the issue and sale of bonds by the Commonwealth of Pennsylvania, for any lawful purpose," etc., is unconstitutional, inasmuch as it does not specify the purpose for the issuing of the bonds as required by article IX, section 5, of the Constitution.

4. The Constitution demands that every act which authorizes the borrowing of money by the Commonwealth shall specify distinctly, without reference to other sources of information, a single purpose for which the money is to be borrowed.

5. An act authorizing the governor to apportion the proceeds of a state loan, without stating a single purpose for which the money is to be borrowed, is unconstitutional.

Argued December 2, 1924. Appeal, No. 8, May T., 1925, by defendants, from decree of C. P. Dauphin Co., No. 778, Equity Docket, No. 62, Commonwealth Docket 1924, on bill in equity, in case of Charles H. Hollinger, member of the State Employes' Retirement Association of the Commonwealth of Pennsylvania et al., v. Clyde L. King, Charles A. Snyder, Mary Vaughan Lachenmeyer, Howard W. Fry and Minnie H. Irwin, State Employes'

Retirement Board Members of the Commonwealth of Pennsylvania, and Leon Henderson, State Employes' Retirement Board Secretary of the Commonwealth. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction. Before HARGEST, P. J., WICKERSHAM and FOX, JJ.

The opinion of the Supreme Court states the facts.

Decree for plaintiff in opinion by HARGEST, P. J. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Philip S. Moyer,* Deputy Attorney General, with him *J. H. Fertig,* and *George W. Woodruff,* Attorney General, for appellants.—The Act of June 6, 1923, P. L. 494, sufficiently specifies, by reference to the Constitution itself, the purpose for which the money is to be used: Kugler's App., 55 Pa. 123; Smith v. Browne, 206 Pa. 543.

The amendment to article IX, section 4, of the Constitution, adopted by the electors of the State, November 6, 1923, is a valid part of the Constitution: Com. v. King, 278 Pa. 280; Armstrong v. King, 281 Pa. 207.

*Geo. Ross Hull,* of *Snyder, Miller & Hull,* for appellees.—The act must specify the purpose of the loan: Collins v. Kephart, 271 Pa. 428.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 5, 1925:

Plaintiff filed a bill in equity to enjoin the State Employes' Retirement Association from purchasing part of a $15,000,000 bond issue, which the governor proposed to sell under the provisions of the Act of June 6, 1923, P. L. 494, and to have the act declared invalid as a violation of article IX, section 5, of the Constitution of

Pennsylvania, which provides: "All laws, authorizing the borrowing of money by and on behalf of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for the purpose specified and no other"; also to have the amendment to article IX, section 4, of the Constitution, under the provisions of which the issue was proposed to be made, declared illegal and void. Defendants demurred. The court below dismissed the demurrer, sustained the bill, and enjoined the issue of bonds, because no act of assembly had been passed authorizing the borrowing of money and specifying the purpose for which the money was to be used, as required by the above-quoted constitutional provision. At the same time, the court below found the amendment of article IX, section 4, to be an unimpeachable part of the Constitution. Defendants have appealed from the decree dismissing the demurrer and granting the injunction.

Plaintiff contends that the securities here in controversy would be invalid when issued because the amendment to article IX, section 4, of the Constitution (see P. L. 1921, p. 1238), which authorizes the State to increase its bonded indebtedness, was submitted to and approved by the electors in a year, 1923, when such actions were forbidden by the organic law, and that, inasmuch as no bonds have as yet been issued under the amendment, its invalidity is still open to question.

In Armstrong v. King, 281 Pa. 207, 214, 217, 218, we considered the validity of a joint resolution, proposing to submit an amendment to the people at the general election in 1924, and held the resolution unconstitutional, saying, in the course of our opinion, that the submissions of amendments in 1911, 1913, 1918 and 1923 were "untimely," but adding, in our subsequent discussion of relevant cases from other jurisdictions, that, after the adoption of an amendment by the people, where bonds had been issued "in accordance with it," or where "public or private rights would be disturbed," no judicial

attack could be made on the validity of the amendment or the securities issued thereunder.

Plaintiff, relying on the above fragments from our former opinion, contends that the submission of a constitutional amendment in 1923 being "untimely," the one now before us is open to attack, notwithstanding its approval by the people, because no rights have accrued and vested under it through the actual sale of bonds. Plaintiff's contentions were rightly overruled, the court below saying, "We are of opinion that the effective thing is the approval of the electors and that the opinion in Armstrong v. King, supra, so decides." Our deliberate thoughts on the point at issue are so fully developed in Armstrong v. King, supra, that it would serve no useful purpose to restate them at this time; it is enough to say that the views there expressed are here applied, and the ruling of the court below, that the amendment adopted November 6, 1923, is an unimpeachable part of the Constitution, is sustained. As we said at pages 222-3 of our opinion in the case here referred to, "The approval of the people gives unattackable validity to......amendments submitted to them."

We shall consider next the constitutionality of the act before us under the above-quoted section 5 of article IX, of our organic law. In passing on this phase of the case, the court below said: "It is contended that this act of assembly is unconstitutional because it does not specify a purpose for the issuing of the bonds but is a general act authorizing the issue and sale of bonds for 'any lawful purpose.' The title to the act is: 'An act authorizing the issue and sale of bonds by the Commonwealth of Pennsylvania for any lawful purpose; defining the powers and duties of the governor, the auditor general, and the state treasurer in relation thereto; making an appropriation of the proceeds of such bonds for the purposes intended; providing for the payment of interest on, and the redemption of, such bonds by the Sinking Fund Commission; and fixing the compensation of the loan and

transfer agent of the Commonwealth in connection therewith.' Section 1 provides that, 'The governor......is hereby authorized to borrow, from time to time, on the credit of the Commonwealth of Pennsylvania, such sum or sums of money and for such purposes as the Constitution authorizes the State to issue bonds.' Section 4 provides: 'The proceeds realized from the sale of bonds under the provisions of this act shall be paid into the state treasury, and shall be set apart and be kept in a separate fund to be designated according to the particular purpose for which the loan is made. All moneys in such fund, from time to time, are hereby specifically appropriated to the proper department for the purpose intended.' Section 9 provides for a report by the state treasurer to the general assembly of the amount of bonds outstanding, the amount issued, redeemed, cancelled and destroyed, and 'the total amount of the proceeds thereof used by the proper department for the purposes for which the same is appropriated.' "

The opinion then goes on to state: "This act of assembly does not refer to any specific kind of bonds. It gives the governor the right to borrow such sum or sums of money 'for such purposes as the Constitution authorizes the State to issue bonds.' In other words, the governor may determine that the Commonwealth needs money for any of the six purposes [allowed by article IX, section 4, of the Constitution], and direct that such amount [of bonds] as he thinks necessary shall be issued; [though,] in that respect, he is limited [by the Constitution] to one million dollars to supply deficiencies in revenue and one hundred millions of dollars for highway purposes. The governor acted upon [the above] theory in this instance, for the proposal does not specify for what purpose the fifteen millions of dollars to be raised by the issue of bonds are to be used. There is no suggestion in the proposal that these bonds are to be used for highway purposes or that one million dollars of the amount may not be used to supply deficiencies in revenue, unless

it is inferred from the language of the second paragraph, which is as follows: 'This is a part of a loan authorized by an amendment to article IX, section 4, of the Constitution of the Commonwealth of Pennsylvania, approved by vote of the people at the November elections 1923.' But this is indefinite, because the amendment authorized loans for any of the six purposes mentioned in it as well as for the increase in highway indebtedness. How will the proceeds of this $15,000,000 bond issue be designated for use by the Highway Department, if that be the purpose? Manifestly, the governor, who is authorized to borrow, must so designate. This amounts to an appropriation of the proceeds by the governor. But section 16, of article III, of the Constitution provides that 'no money shall be paid out of the treasury, except upon appropriations made by law.' If the governor designates that part of the proceeds of the bonds be applied to one purpose and part to another, such designation would not be an 'appropriation made by law,' within the meaning of the Constitution, and would hardly be cured by the general language of section 4 of the act, which provides that the moneys in the separate funds 'are hereby specifically appropriated to the proper department for the purpose intended.' The legislature has not designated any purpose and is thereby investing the governor with the power of appropriation [or such is the attempt]. ......The Constitution provides that a law which authorizes the borrowing of money shall specify the purpose for which the money is to be used. To 'specify' means 'to mention specifically; state in full and explicit terms; name expressly or particularly': Standard Dictionary; Peters v. Banta (Ind.), 23 N. E. 84, 85. It is an ordinary word used in common speech and generally understood; it must be given the understanding which the people who voted for the Constitution would give it: Collins v. Kephart, 271 Pa. 428, 434. 'Specific' is the very opposite of 'general': Smith v. McCoole, 46 Pac. 988, 989, 5 Kans. 713. This act of assembly is anything

but specific; it is general in its terms, authorizing the governor to borrow any sum or sums of money to the limit, and for any and all the purposes which the Constitution allows, and to apportion the proceeds as he shall direct. Moreover, the Constitution requires that every act of assembly authorizing the borrowing of money shall specify the purpose 'and the money so borrowed shall be used for the purpose specified and no other.' To issue bonds under this act of assembly would be a plain violation of this constitutional provision, because there is no purpose specified by the act. The most that can be said for it is that there are at least six purposes contemplated by it, being all that the Constitution allows, and there is no limitation upon the use of the money for any one purpose. The Constitution uses the word 'purpose' in the singular and it requires that the borrowing of money shall be made by an act of assembly which specifies a single purpose. We therefore conclude that [the present] act of assembly is invalid in so far as it attempts to authorize the issuance of the $15,000,000 of bonds involved in this controversy."

As the foregoing excerpts from the opinion of the court of common pleas dispose of the points at issue correctly, we need but express our approval and say that the Act of June 6, 1923, P. L. 794, is unconstitutional to the extent indicated. In brief, we agree that the Constitution demands that every act which authorizes the creation of a debt shall state distinctly, without reference to other sources of information, a single purpose for which the money is to be borrowed. The present act offends against this requirement and also breaches the Constitution in the other respects referred to in the above-quoted excerpts from the opinion of the court below; for the reasons given by it, that tribunal properly issued the injunction assigned for error.

The decree is affirmed.