THOMAS F. JENNINGS, Appellant, v. EDMUND R. KINSEY et al., Constituting Board of Public Service of City of St. Louis.

In Banc, April 13, 1925.

1. **APPROPRIATION OF BONDS: Charter.** Under the Charter of St. Louis (Sec. 3, art. 17) providing that if two-thirds of the voters of the city voting at an election for the issuing of bonds vote for such issuance, then such bonds may be issued, and "such bonds or the proceeds thereof may from time to time, by ordinance, be appropriated in any amount to the purpose for which such total amount was voted," the Board of Aldermen has authority, by ordinance, to appropriate bonds to pay for the public improvement for which they were voted, and such an ordinance is not void because it does not appropriate money alone for such purpose.

2. ————: **Propriety of Charter Provision: Public Policy.** Courts have nothing to do with the propriety or expediency of a provision of a city charter which clearly authorizes the enactment of an ordinance appropriating bonds to pay for a public improvement, or with the wisdom of such an ordinance; they can pass only on the reasonableness of any construction of the charter contended for. Besides, the Legislature has, by statute (Sec. 7763, R. S. 1919) expressly authorizing cities of the first class, in providing for public improvements, to pay for such improvements by the appropriation of the proceeds of bonds sold for the purpose, or with the bonds themselves, indicated a legislative policy of the State to allow an appropriation of the bonds.

3. **APPROPRIATE: Meaning.** To "appropriate bonds" for use in paying for an authorized public improvement does not mean to divide or apportion the bonds for the purposes for which they were voted, nor does an ordinance appropriating them to pay for the improvement when completed mean that the ordinance has assigned for those purposes certain bonds which must afterwards be sold before the contract for the improvement is let; but it means that the bonds are set aside to be used in paying for the work.

Citations to Headnotes: Headnote 1: **Municipal Corporations,** 28 Cyc. p. 970. Headnote 2: **Constitutional Law,** 12 C. J. sec. 390; **Municipal Corporations,** 28 Cyc. p. 1057 (Anno); **Statutes,** 35 Cyc. p. 1103. Headnote 3: **Appropriate,** 4 C. J. p. 1457.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*W. K. Koerner* and *Lloyd L. Adams* for appellant.

(1)   Illegal action of public officials involving the expenditure of public funds will be enjoined at the suit of a taxpayer.   Civic League v. St. Louis, 223 S. W. 891. (2)   An ordinance is invalid when not enacted in compliance with the provisions of the charter. State ex rel. v. Dierkes, 214 Mo. 592; Peters v. St. Louis, 226 Mo. 62. (3)   Charter limitations safeguarding the expenditure of public money should be construed and applied to secure the end sought.   Dillon on Municipal Corps. (5 Ed.) sec. 294.   (4)   An ordinance of the city of St. Louis authorizing public work must contain a specific appropriation of an amount sufficient to pay the city's part of the estimated cost.   City Charter, art. 17, secs. 1, 2 and 5.   (5)   An appropriation for public work made by ordinance must be of cash actually in the city treasury. An appropriation of unissued and unsold bonds is invalid. City Charter, Art. 4, sec. 25; Art. 15, sec. 2; Art. 16, secs. 4 and 5; Art. 22, secs. 1, 2 and 5.   Especially is this true when the appropriating ordinance authorizes the Comptroller, at his option, to pay for the work in bonds, instead of selling the bonds and paying for the work in cash.

*Oliver Senti* and *Charles J. Dolan* for respondents.

(1)   The charter of the city of St. Louis authorizes the Board of Aldermen to appropriate either bonds of the city, or the proceeds of the bonds, to the purpose for which such bonds may have been voted.   City Charter, Art. 17.   This provision of the charter is in harmony with the general law of the State governing cities of the first class.   R. S. 1919, sec. 7763.   (2)   The bonds in question have been both apportioned and appropriated already by the vote of the people.   Pryor v. Kansas City, 153 Mo. 135.   (3)   Charter provisions limiting appropriations to the amount standing to the credit of the fund from which the appropriation is made relate only

to revenue funds.  City Charter, art. 16, sec. 5; Pryor
v. Kansas City, supra.  (4)  The city is authorized to
incur indebtedness and issue its bonds to pay the cost of
the work herein involved.  In the absence of any express
limitation or restriction, it is authorized to issue its
bonds and contract for public work in the most econom-
ical manner possible.  Dillon on Municipal Corps. (5
Ed.) sec. 239, p. 454.  (5)  The words "specific appro-
priation" are not limited in their application to appro-
priations of money.  Pryor v. Kansas City, supra; R.
S. 1919, sec. 7763; Webster's International Dictionary.

WHITE, J.—This is a proceeding whereby the plain-
tiff as a resident taxpayer of the city of St. Louis seeks
to enjoin the defendants, constituting the Board of Pub-
lic Service of the city, from advertising for bids and
letting contracts in pursuance of Ordinance No. 33642,
and to declare said ordinance null and void.

The plaintiff filed his amended petition January 20,
1924, and the defendant filed a demurrer to the petition
on the ground that it did not state facts which showed
grounds for equitable relief, or state any cause of ac-
tion against the defendants.  The demurrer was sus-
tained, plaintiff declined to plead further, and judgment
accordingly was entered for the defendants.  From that
judgment the plaintiff appealed.

The petition alleges that February 9, 1923, a special
election was held in the city of St. Louis, on twenty-one
propositions for the issuance of bonds aggregating $88,-
372,500; that of the twenty-one propositions, nineteen re-
ceived the vote of more than two-thirds of the voters
voting at the election, and the nineteen propositions in-
volved the issuance of 75,373 bonds of one thousand dol-
lars each.

That Proposition No. 7, carried by more than two-
thirds majority, authorizing bonds for $11,000,000, pro-
vided for the improvement of sanitary conditions in the
city of St. Louis by converting the River des Peres into
a public sewer, and the construction of laterals, etc.

In January, 1924, the Board of Aldermen of the City of St. Louis, in pursuance of the authority given by Proposition 7, adopted ordinance numbered 33,642, entitled,

"An ordinance authorizing the Board of Public Service to let a contract for the construction of Section 'E' of the River des Peres Drainage Works, making an appropriation to pay the cost of the work and containing an emergency clause."

Section one of the ordinance authorized the Board of Public Service to let a contract for the construction of Section "E" of the River des Peres Drainage Works, and describes the points where Section "E" begins and ends. Section Two of the ordinance is as follows:

"Section Two. The bonds of the city of St. Louis numbered thirty-eight thousand, five hundred and fifty-one to forty thousand, one hundred and fifty, inclusive, authorized to be issued and sold by Proposition Seven of Ordinance Thirty-two thousand, four hundred ninety-six, *are hereby appropriated to pay the cost of the work authorized herein,* and the Mayor and the Comptroller are hereby authorized and directed to issue and sell from time to time any of the bonds numbered as aforesaid in such amounts as shall be necessary to meet payments on account of this contract, as they fall due, under the provisions of the contract; provided, however, that no bonds shall be sold for less than ninety-five cents on the dollar, plus the interest accrued to the date of delivery on the unmatured interest coupon attached thereto next to become due; and, provided, further, that all payments on account of the contract herein authorized may be made at the option of the Comptroller *with the bonds themselves,* at ninety-five per cent of their face, instead of money."

The petition then alleges that the Board of Aldermen had no authority to enact such ordinance; that it was null and void, because the charter of the city of St. Louis requires an ordinance for public work to contain a *specific* appropriation of an amount sufficient to pay

the city's part of the estimated cost; that the appropriation of *bonds* is not a specific appropriation in the meaning of the Charter.

I.   In support of his position that the Board of Public Service had no authority to let a contract for the contemplated work and pay for the same by appropriating bonds, the appellant quotes from Section 25, Article IV, of the Charter of the city, which provides that,

**Appropriation of Bonds: Charter Authority.**

"Except as otherwise expressly provided in this Charter, no money shall be expended except in consequence of appropriations made by ordinance."

Also from Article XV, Section 2:

"The Comptroller shall audit all payrolls, accounts and claims against the city . . . but no payroll account or claim shall be audited against the city unless certified by the officer having knowledge of the facts, and authorized by law or ordinance, and the amount required for payment of the same appropriated for that purpose by ordinance and in the treasury . . . "

Also from Sections 4 and 5 of Article XVI of the Charter:

"Section 4:  All appropriations shall be specific and in detail and be segregated according to the functions or kinds of work for which the money is appropriated.

"Section 5:  Except in the general appropriation bill and bills providing for the payment of the principal or interest of the public debt, no appropriations shall be made from any revenue fund in excess of the amount standing to the credit of such fund, and no appropriation shall be made from any fund for any purpose to which the money therein is not lawfully applicable."

Also from Section 2 of Article XXII of the Charter, a portion of which, after requiring that an ordinance providing for a particular improvement shall contain certain specifications, reads: "*a specific appropriation* of an amount sufficient to pay the city's part of the estimated cost."

Appellant argues that these provisions of the charter contemplate the necessity of selling bonds, which are issued for public improvements, and the appropriation of money for the purpose of paying for the improvements; that the city has no authority to contract for public work until the money is appropriated and ready for the payment; that the express grant of power to appropriate bonds as such was not written into the charter, and none can be implied; that the appropriation of bonds is not necessarily incident to the power to make contracts for public works.

This argument does not take account of Article XVII of the Charter which relates to city bonds. A portion of Section 3 of that article provides that if two-thirds of the voters of the city voting at an election for the issuance of bonds vote for such issuance, then such bonds may be issued, and *"such bonds or the proceeds thereof may from time to time, by ordinance . . . be appropriated in any amount or amounts to the purpose or purposes for which such total amount was voted."*

This is a sufficient answer to the assertion that the city has no express authority to appropriate bonds instead of money. Appellant devotes considerable space in his argument to the supposed impropriety of a construction of the charter which would authorize the appropriation of bonds, urging that bids could be let much more satisfactorily, and contractors would bid with greater confidence if they knew that money was in the treasury with which to pay for the work, instead of incurring the possibility of being paid in bonds of uncertain value.

We have nothing to do with the propriety or expediency of the provisions of the St. Louis Charter. We can pass only on the reasonableness of the construction contended for. The Legislature, in Section 7763, Revised Statutes 1919, expressly authorized cities of the first class, in providing for public improvements, to pay for such improvements by the appropriation of the proceeds of bonds sold for the purpose, or with the bonds themselves, indicating a legislative policy of the State to

allow that method.  It is pointed out by the respondent that it would be a saving to the city to pay for such work in bonds instead of with the proceeds of the bonds, because if the bonds were first sold and the money placed in the treasury, the city would be deprived of the interest on the bonds from the time they were sold until the contract was completed—a possible period of many months. This should be taken into consideration in construing the provisions of the charter in reference to the matter, and ascertaining the purpose of the framers of the charter in putting that provision in Article 17.

Appellant contends that specific appropriation, as the expression is used in Section 2 of Article 22, can mean only an appropriation of money.  No definition or explanation of the expression "specific appropriation" is suggested to authorize that conclusion.

II.  It is further argued by the appellant that the word "appropriate" as used in Section 3, Article XVII, does not mean the setting apart of money for the contract, but it means to divide—apportion—the bonds issued to the proper purposes for which they were voted, and when the city authorities appropriate the bonds for those purposes it means that they assign for those purposes certain bonds which afterwards must be sold before a contract is let.  The word "appropriate," used as a verb, when applied to payment for public work, seldom if ever has the meaning contended for.  To appropriate means to allot or assign, to set apart, or to apply to a particular use or a purpose.  [1 Words & Phrases, p. 471; 1 Words & Phrases (2nd Series) 257.; 4 C. J. pp. 1459-1460.]  See Pryor v. Kansas City, 153 Mo. 135, l. c. 145-146, where this court quoted from Webster's Dictionary the definition of "appropriate" as follows:  "To set apart, or assign to a particular person or use in exclusion of others; to use or employ for a particular purpose, or in a particular case; to appropriate, to devote, as to apply money to the payment of a debt."  Thus it appears that the most reasonable construction of the

term, in view of the circumstances and the reason for the employment of the word in the charter, does not authorize the construction contended for by the appellant.

The judgment is therefore affirmed. All concur.