## McCOMBS et al. v. DALLAS COUNTY et al.
### No. 12981.

Court of Civil Appeals of Texas. Dallas.

Feb. 6, 1940.

Rehearing Denied Feb. 24, 1940.

McCombs & Andress, of Dallas, Gerald C. Mann, Atty. Gen., and W. F. Moore and Glenn R. Lewis, Asst. Attys. Gen., for appellants.

Andrew Patton, Dist. Atty., and E. G. Moseley, David M. Weinstein, Harold McCracken, and Paul Peurifoy, Asst. Dist. Attys., all of Dallas, for appellees.

C. T. Gettys and H. Grady Woodruff, both of Decatur, for Wise County, amicus curiae.

T. B. Coffield, of Bowie, and H. N. Dearmore, of Montague, for Montague County, amicus curiae.

Cecil Murphy and W. D. Garnett, both of Gainesville, for Cooke County, amicus curiae.

LOONEY, Justice.

This suit challenges the constitutional validity of Senate Bill No. 224, enacted at the regular session of the 46th Legislature, Vernon's Ann.Civ.St. art. 7294a. The Act purports to grant and donate to the several counties of the State (with exceptions), for

a period of five years, beginning with the fiscal year 1940, one-half the ad valorem taxes levied and collected by the State for general revenue purposes, in the respective counties.

The suit was brought by Chas. S. McCombs and Wm. Andress, Jr., resident taxpaying citizens of Dallas County, against the County, the County Judge, County Commissioners, Auditor, Treasurer, County Clerk, and the Tax Assessor and Collector, seeking a permanent injunction against the enforcement of the Act by the defendants named. The State of Texas, through its Attorney General, was permitted to intervene, alleging substantially the same cause of action, seeking the same relief as that sought by plaintiffs. Plaintiffs and intervener contended below, and contend here, that the Act is unconstitutional and void in that, it violates the following provisions of the Constitution, to wit: Sec. 9 of Art. 8; Sec. 1 of Art. 2; Sec. 1 of Art. 3; Sec. 18 of Art. 5; Sec. 6 of Art. 8, and Sec. 35 of Art. 3, Vernon's Ann.St.

These questions will be discussed in the order named. But, before beginning the discussion, wish to commend counsel for the parties, as well as amici curiae, for their able and comprehensive briefs and arguments, without which, our labors would have been much more arduous and difficult.

█ (1) Does the Act violate Sec. 9 of Art. 8 of the Constitution, in that, it diverts one-half the general revenue fund of the State, from the purposes for which the same was created, and bestows same upon counties, to be expended by, or under the direction of the commissioners' courts of the respective counties, for the various purposes named?

Section 9 of Art. 8 of the Constitution limits the amount that may be raised by taxation for general state purposes; also limits the amount that may be raised by the counties for general and specific purposes. The pertinent portion of the section reads: "The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five cents for city or county purposes * * *".

Section 3 of the Act under consideration authorizes the commissioners' courts of the respective counties to expend the state funds granted, in the following language: "The taxes donated and granted by this Act and collected in each respective county shall be used by the County Commissioners' Court of said county for any purpose permitted by and not inconsistent with the Constitution of Texas, including the following purposes: (a) lowering the ad valorem tax rate for county purposes; (b) constructing flood control works and improvements in said county; (c) for improvements to prevent soil erosion and for soil conservation purposes; (d) for irrigation and drainage projects; (e) reforestation and road building; (f) conservation and utilization of water; (g) for projects sponsored by a county in cooperation with the Federal Works Progress Administration or its successors; (h) for the purchase of rights-of-way for public roads; (i) for general relief and charitable purposes; (j) for paying the interest and sinking fund on any outstanding bonded indebtedness of the county; (k) for assisting in the development of navigation; (1) and for any other purpose or purposes not specifically prohibited by the Constitution."

While it is true, no express prohibition can be found in the Constitution against the diversion of the state funds in question, and its expenditure for the purposes named, yet we think the conclusion inescapable that such is impliedly prohibited. If not impliedly prohibited, why should separate funds have been created by the Constitution, and limitations prescribed on the rates of taxation in support of each? It is said in 12 C.J. 699, Sec. 41, that: "It is not always necessary, in order to render a statute invalid, that it should contravene some express provision of the Constitution; if the act is inhibited by the general scope and purpose of the instrument, it is as much invalid as though prohibited by the express letter of some of its provisions. Therefore the implied power and restraints to be found in a constitution are a very important part of it."

The case of Carroll v. Williams, 109 Tex. 155, 202 S.W. 504, involved the transfer by the commissioners' court of money from the county's general fund to its road and bridge fund. The Supreme Court held that this could not be done, saying, in substance, that: Article 8, Sec. 9 of the Constitution was designed to limit not only the taxes which could be levied by a county for the several purposes mentioned, but

the amounts which it was authorized to expend for such purposes from money raised by taxation. It inhibits such expenditure in excess of the fund which it could lawfully raise for the purpose through the device of transferring thereto money from other funds and raised by taxation for other purposes. Saying that, it appears to be the intention of Art. 8, Sec. 9, of the Constitution, that funds raised by taxation for the specific purposes therein enumerated should be expended for such purposes, and are not authorized to be transferred to other funds under the powers conferred by Art. 1440, Rev.Stats. The fact that the road and bridge fund as increased by transfer thereto of funds raised by taxation for general county purposes did not exceed the amount which might have been lawfully raised by taxation for road and bridge purposes under the maximum taxes authorized, but not levied, did not render such transfer lawful. The amount which a county could lawfully expend annually from a given fund created by the Constitution out of taxes which it authorized might be increased by an unexpended balance of such fund brought over from the previous year, but not by transfer from another fund created by the Constitution for other purposes. The same principle was applied by the Supreme Court in Mitchell County v. City National Bank, 91 Tex. 361, 43 S.W. 880, in refusing to uphold bonds issued by the county, ostensibly for road and bridge purposes, but intended to be used in liquidating other indebtedness outstanding against the county. The court held that, because of the evident evasion, the bonds were invalid in the hands even of an innocent purchaser.

It will be observed that the same constitutional provision, Sec. 9, Art. 8, authorizing and limiting the levy of not exceeding thirty-five cents on the one hundred dollars valuation for general state purposes, also authorizes and limits the amount of taxes that may be raised for different county purposes. As stated in 11 Tex.Jur. p. 610, Sec. 78: "The immediate purpose of the provision is to limit the amount of taxes that may be raised for these several purposes, respectively; but it is also designed to inhibit excessive expenditures for any such purpose, and to require that any and all moneys raised by taxation for any purpose shall be applied to that particular purpose and to no other."

The grant of money to the counties not being authorized by any special provision of the Constitution, for reasons just stated, we think the Act is unconstitutional.

■. (2) Appellants' second, third and fourth grounds of attack on the Act are that, it violates Sec. 1, Art. 2, Sec. 1, Art. 3, and Sec. 18, Art. 5, of the Constitution, in that, it confers upon the commissioners' courts of the several counties legislative power, and vests in said courts jurisdiction over matters other than county business.

Section 1, Art. 2 of the Constitution, distributes the powers of government, and Sec. 1 of Art. 3 vests in the Legislature the legislative power of the State.

Although by specific terms the Act grants to the counties for five years, one-half the state's general revenue collected for various state purposes, yet it is devoid of any regulatory or administrative provision in regard to the ways and means of accomplishing the purposes for which the money is appropriated; thus, in effect, confers upon each commissioners' court, carte blanche, legislative authority to adopt its own ways and means of furthering and consummating the various enterprises and purposes named in the Act; and the ways and means adopted by the several commissioners' courts may, and doubtless would be as variant as the counties involved are numerous. Aside from the granting provision (Sec. 1) and the designated purposes for which the money may be expended (Sec. 3), the Act is a mere skeleton and incomplete.

The rule is announced in 11 Am.Jur. 924, Sec. 215, that: "One of the most important tests as to whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the statute as it appears when it leaves the hands of the legislature. The generally recognized principle is that a law must be so complete in all its terms and provisions when it leaves the legislative branch of the government that nothing is left to the judgment of the electors or other appointee or delegate of the legislature. The rights, duties, privileges, or obligations granted or imposed must be definitely fixed or determined, or the rules by which they are to be fixed and determined must be clearly and definitely established, when the act is passed by the legislature and approv-

ed by the governor. The law must be perfect, final, and decisive in all of its parts, and the discretion which is given must relate only to execution."

The case of Peabody v. Russel, 302 Ill. 111, 134 N.E. 150, 152, 20 A.L.R. 972, from the Supreme Court of Illinois, is very much in point. The Legislature appropriated to the Department of Finance half million dollars "to be apportioned between the executive, judicial and military departments of the State government and allotted as emergencies arise by the director of finance with the approval in writing of the Governor". The Supreme Court declared the appropriation unconstitutional and, among other things, said: "Manifestly such an appropriation has neither certainty as to the department by which the appropriation is to be used nor as to the purpose for which it is to be expended. * * * 'The General Assembly must determine to what objects and purposes money of the state shall be appropriated, and cannot bestow that power upon any person or board for the exercise of discretion of the donee as to the objects for which the money shall be expended'. * * It is clear from the item of the Appropriation Act objected to that the appropriation itself is not a complete act of legislation, but seeks to delegate to an administrative officer the specification of objects and purposes and the determination of distinct items therefor. The Constitution expressly requires these acts to be performed by the General Assembly itself. * * * In our judgment, if this appropriation for the benefit of either one, two, or three departments of the state government, without specifying the definite purpose or object of the appropriation, can be sustained, then such appropriations for every branch of the state government just as indefinite must be sustained, and we see no legal reason why, if $500,000 could be thus appropriated, even larger sums might not be appropriated to various state departments in the same indefinite and uncertain manner."

Whether or not an act contains a delegation of legislative power, must be tested by its own terms. In the following cases, the question was considered and discussed: Green v. City of Amarillo, Tex.Civ.App., 244 S.W. 241, affirmed by the Supreme Court, Tex.Com.App., 267 S.W. 702; Stephenson v. Wood, Tex.Civ.App., 35 S.W.

2d 794; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A. L.R. 1107; State ex rel. Perkins v. Hardwick, 144 Kan. 3, 57 P.2d 1231, by the Supreme Court of Kansas; State ex rel. Maxwell Hunter, Inc. v. O'Quinn, 114 Fla. 222, 154 So. 166, by the Supreme Court of Florida.

The Constitution, Sec. 18, Art. 5, provides that: "* * * The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed".

In the early case of Sun Vapor Electric Light Co. v. Keenan, 88 Tex. 197, 30 S. W. 868, after referring to the provision of the Constitution just quoted, Chief Justice Gaines used the following pertinent language; he said: "The powers which the legislature may require them [commissioners' court] to exercise are confined by this section to county business, and we think it clear that the administration of the effects of a dissolved corporation and the payment of its debts are not such business." To the same effect, see Ranken v. McCallum, 25 Tex.Civ.App. 83, 60 S.W. 975, writ refused.

So, we conclude that the Act confers upon the commissioners' courts of the several counties, legislative authority with reference to the accomplishment of the various purposes for which the money was appropriated, also confers upon said courts jurisdiction over matters, other than strictly county business, and for these reasons, we hold the Act unconstitutional and void.

(3) Appellants also contend that, in attempting to draw money from the State Treasury, without a specific appropriation and for a longer term than two years, the Act violates Sec. 6 of Art. 8 of the Constitution.

Section 1 of the Act, among other things, provides that, "The taxes hereby donated and granted shall be levied and assessed and collected as now provided by law, except that the Assessor and Collector of Taxes in each respective county shall forward his reports to the Comptroller of Public Accounts as provided by law and shall pay over to the Treasurer of the county

one-half (½) of all moneys collected by him at the end of each month and during the period covered by this donation, except such amounts as are allowed by law for assessing and collecting the same, and shall forward a duplicate copy of the receipt given him by the County Treasurer for said money to the Comptroller."

We do not think that the attempted arrest of the money and its diversion from the State Treasury to those of the counties, as provided in the Act, can be given the effect of changing the nature of the fund, or of exempting the Act from the provisions of Sec. 6 of Art. 8 of the Constitution. As heretofore shown, one-half the State ad valorem taxes, levied and collected for general purposes, is appropriated to the counties for a period of five years, to be expended, by or under the direction of the respective commissioners' courts, for any purpose, state or county, not inconsistent with, or expressly prohibited by the Constitution. But the Act fails to specify any particular purpose or purposes for which the money must be spent, leaving the selection of the subjects and the amount to be allotted to each, to the uncontrolled discretion of the respective commissioners' courts. And furthermore, the amounts appropriated, necessarily, are indefinite, and incapable of being rendered certain, in that, the rate of taxation (an essential element in determining the amount of tax money to be collected) has not yet been ascertained and fixed, under rules prescribed by Arts. 7041–7044, for either of the five years involved.

The term "specific appropriation" used in this connection has been construed by the courts of this and other states. One of the latest cases is that of National Biscuit Co. v. State, 129 S.W.2d 494, 497, decided by the Austin Court of Civil Appeals. By a concurrent resolution, the Legislature authorized suit by the Biscuit Company, to recover from the State the amount of certain franchise taxes theretofore paid under unconstitutional statutes. The Legislature also attempted to make an appropriation to pay any judgment obtained against the State. In holding the appropriation invalid under Sec. 6, Art. 8 of the Constitution, the Court said: "The attempted appropriation would also appear to contravene Sec. 6 of Art. 8 of the Constitution, Vernon's Ann.St., providing that 'No money shall be drawn from the Trea-

sury but in pursuance of specific appropriations made by law;' etc. While this provision was designed to safeguard moneys properly placed in the State Treasury from being unlawfully withdrawn therefrom; it also discloses a purpose of the framers of the Constitution to require that appropriations made by the Legislature be made specific, and that they be made by law. A mere attempted appropriation which names no sum, prescribes no limit as to amount, by resolution and not by law, manifestly does not meet the requirement." A writ of error was granted in the case and in holding the appropriation feature of the resolution unconstitutional and void, the Supreme Court, among other things, said: "The State contends that this attempted appropriation violates both of the above-mentioned constitutional provisions. As just stated, one of the provisions of Section 6 of Article 8 of our Constitution requires all appropriations of money out of the State Treasury to be specific. It is settled that no particular form of words is required to render an appropriation specific within the meaning of the constitutional provision under discussion. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made. An appropriation can be made for all funds coming from certain sources and deposited in a special fund for a designated purpose. In such instances, it is not necessary for the appropriating Act to name a certain sum or even a certain maximum sum. 38 Tex.Jur. pp. 844–845, Sec. 27, and authorities there cited. In spite of the above rules of law, we think that this attempted appropriation falls short of meeting the constitutional requirement that it be specific. It is absolutely conditional or contingent as to whether it will ever become effective, depending on when and if a final judgment shall be awarded. It is indefinite as to amount, or even as to a maximum amount, leaving that matter, not to the Legislature, but to another branch of the Government, the courts to determine. We do not believe that such an appropriation of money out of the State Treasury meets the constitutional requirements that it shall be specific." National Biscuit Co. v. State, 135 S.W.2d 687, 693, not yet reported in State reports.

The Florida Supreme Court, in State ex rel. Bonsteel v. Allen, 83 Fla. 214, 91 So. 104, 106, 26 A.L.R. 735, defining the phrase

said: "It is a setting apart of money formally or officially for a special use or purpose * * *, and, where that is done by the Legislature in clear and unequivocal terms, it is an appropriation." The California Supreme Court, in Stratton v. Green, 45 Cal. 149, said that the phrase means, "an Act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand." The Constitution of the State of Nebraska contains a provision very similar to the provision of our Constitution. The Supreme Court of that State, in a case reported, State ex rel. Cline v. Wallichs, 15 Neb. 609, 20 N.W. 110, said that: "A specific appropriation is one expressly providing funds for a particular purpose. There can be no implied appropriation of money under our constitution, nor any claim audited, unless the items of the account are set out. State [ex rel. Squires] v. Wallichs, 14 Neb. 439, 16 N.W. 481. There is also a provision that 'no money shall be diverted from any appropriation made for any purpose.' The legislature possesses no power to make an implied appropriation, and, there being no express appropriation of the temporary school fund for the purposes named, the auditor had no authority to draw a warrant." In the case of Davis v. Steward, 198 Ky. 248, 248 S.W. 531, 532, the Court of Appeals of Kentucky said that: "An appropriation by the Legislature is the setting apart of a particular sum of money for a specific purpose". In Jennings v. Kinsey, 308 Mo. 265, 271 S.W. 786, 788, the Supreme Court of Missouri used the following language: "To appropriate means to allot or assign, to set apart, or to apply to a particular use or a purpose. 1 Words and Phrases [First Series], p. 471; 1 Words and Phrases, Second Series, 257; 4 C.J. pp. 1459, 1460. See Pryor v. Kansas City, 153 Mo. 135 * * *, 54 S.W. 499, 502, where this court quoted from Webster's Dictionary the definition of 'appropriate' as follows: 'To set apart, or assign to a particular person or use in exclusion of others; to use or employ for a particular purpose, or in a particular case; to appropriate, to devote to, as to apply money to the payment of a debt.' " Also see Hollinger v. King, 282 Pa. 157, 127 A. 462, from the Supreme Court of Pennsylvania, and Peabody v. Russel, supra.

It is contended, however, that our Supreme Court, in several instances, has held that similar appropriations by the Legislature were not controlled by the provision of the Constitution under consideration; notably, in the case of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818, 820, the Supreme Court held that, a grant for sea wall purposes, under Art. 11, Sec. 8, of the Constitution, was not limited or controlled by Sec. 6 of Art. 8, Judge Greenwood saying: "We have concluded that section 8 of article 11 of our Constitution expressly authorized the Legislature to grant such aid to the counties and cities on the Gulf coast in the construction of sea walls and breakwaters, as was extended to Aransas Pass. * * * Keeping in mind these related provisions of the Constitution, it seems clear to us that it was the design of section 8 of article 11, when it was adopted, to empower the Legislature to give the state's aid, by grant of the public domain or state taxes, or in any other appropriate manner, to the construction by coast cities and counties, through bond issues, of protective sea walls and breakwaters; and that, in the exercise of this power, the Legislature was not limited by the terms of section 6 of article 8, forbidding the appropriation of public money for a longer period than two years." Also, in the case of Brazos River etc. Dist. v. McCraw, 126 Tex. 506, 91 S.W.2d 665, 674, the Supreme Court made a similar holding with reference to a grant made by the State under the calamity clause of Art. 3, Sec. 51, of the Constitution. After referring to the opinion of Judge Greenwood in the Aransas Pass case, Chief Justice Cureton used the following language: "The allocation involved in the instant case is by virtue of section 51, article 3, of the Constitution, which authorizes 'aid in cases of public calamity.' It is obvious that the power of the Legislature in so far as here involved is just as broad under section 51, article 3, as under section 8, article 11, the constitutional provision before this court in the Aransas Pass Case; and if section 6, article 8, of the Constitution was not a limitation in the one case, it cannot be held to be so in the other." We think it obvious that, in each of the cases mentioned, the Supreme Court would have held Sec. 6 of Art. 8 applicable and controlling, but for the existence of other special provisions, for in each, the Supreme Court based its holding on the idea that, the Act then under consideration was authorized by a special provision of the Constitution, therefore was not limited by Sec. 6 of Art. 8.

As the Act under consideration cannot, in our opinion, be justified under either Sec. 8 of Art. 11 as a sea wall appropriation, or under Sec. 51 of Art. 3, as a public calamity appropriation, or under any other special provision of the Constitution, it follows, necessarily, that it is controlled and limited by the provisions of Sec. 6 of Art. 8; and, as the appropriation is not specific, and made for a longer term than two years, we think the Act must be condemned as unconstitutional and void.

(4) Appellants also contend that the Act violates Sec. 35 of Art. 3 of the Constitution, in that, it contains more than one subject. We do not regard the reported cases on the subject of any particular value as authorities, except as general principles and guiding rules are announced. The fundamental reason for such a provision, as· stated in Cooley's Constitutional Limitations (6th Ed.) p. 170, arose from: "The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the State." And in R.C.L. vol. 25, pp. 843, 844, sec. 90, it is said that: "The word 'subject' is used to indicate the chief thing to which legislation relates, * * *. The 'subject' of an act is the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head."

The different purposes for which the tax money appropriated to the counties may be spent, named or comprehended within the general terms of Sec. 3 of the Act, are numerous and variant, each, in our opinion, being a separate legislative subject, within the meaning of the Constitution. An act that simply appropriates money, without stating the purpose for which the appropriation was made, in our opinion would be incomplete, and an ineffectual piece of legislation. The purpose, the enterprise to be furthered or accomplished, constitutes and is the real subject of legislation; the amount of money allocated being simply an incident. The Act, in our opinion, contains as many

separate and distinct legislative subjects, as the purposes are numerous for which the Legislature authorized the expenditure of the money.

Appellees insist, however, and argue (see their brief, p. 156) that the subject of the Act is, the "remission" of taxes and that, the purposes for which the money may be expended are not properly a part of the subject matter of the Act. The fault with this contention is that, the Act does not pretend to remit taxes; nor, in fact, could taxes be remitted under its terms, but rather, would be collected, and after being collected, diverted from the State Treasury and paid into the Treasuries of the respective counties. Remission is forgiveness, pardon; refraining from exacting, or enforcing, as the remission of a penalty. The provisions of the Act forbid the idea that its subject matter is the remission of taxes. The Act purports, and is, an attempt to appropriate moneys belonging to the general fund of the State, to the respective counties, to be expended for named and unnamed purposes; each, in our opinion, constitutes a separate legislative subject, hence it follows that, in our opinion, the Act offends Sec. 35 of Art. 3 of the Constitution, and for that reason also, is void.

The burden of appellees' contention is that, Senate Bill 224 does not offend the Constitution in either respect as contended by appellants. In preceding pages, we have discussed these questions and reached conclusions contrary to the contention of appellees. They also contend that, the purposes named and unnamed in the Act, for which the Legislature granted money to the counties, are governmental in nature, and affected with a public interest, therefore, the Legislature was well within its constitutional authority in enacting the same. We think it may be conceded that, in a general sense, the purposes for which the Act grants money to the counties, mentioned in Sec. 3, are governmental in nature, and affected with a public interest, as contended; but, even so, that fact would not justify the Legislature in disregarding constitutional rules of legislative procedure and implied prohibitions against its authority to act in the manner attempted. The objections urged to the Act are not leveled, so much at the want of power in the Legislature to authorize the expenditure of public moneys for governmental pur-

poses, as at its disregard of the prescribed course or mode of legislative procedure, and the violation of restrictions against accomplishing the purposes indicated by the means adopted.

We have reached the conclusion that the Act offends the Constitution in the several respects heretofore mentioned. In view of the disposition made of the case, we do not deem it necessary to discuss or decide either of the other questions presented. It follows therefore, that, in our opinion, the Act is void, and it is so declared. The judgment of the trial court is reversed and judgment is here rendered for appellants, perpetually enjoining appellees from acting under, or attempting to enforce the Act in question.

As the Supreme Court has jurisdiction of the case, and an application for writ of error may be promptly presented, appellees' motion to certify questions of law involved in this case is overruled.

Reversed and rendered.

### On Motion for Rehearing.

In their motion for rehearing, appellees request additional conclusions of fact and law, calling our attention to Art. 1873, R.C. S., providing that, within thirty days after a decision, the Court of Civil Appeals shall make and file a conclusion of fact and law upon each material point assigned as error.

■ We have heretofore filed our conclusions of law (the opinion) on all material questions of law brought up for review, but did not file conclusions of fact, and must decline to do so, for the reason that, in our opinion, this is not a fact but altogether a law case.

In Hurt v. Cooper, Tex.Civ.App., 113 S. W.2d 929, 942, quoting from and citing pertinent authorities, we said: " 'Whether a seeming Act of a legislature is or is not a law is a judicial question to be determined by the court and not a question of fact to be tried by a jury, even though a determination of the question may involve a finding of fact.' 59 C.J. 621, § 181. 'The right and duty of the judiciary to take jurisdiction and decide cases when constitutional questions are presented, are both imperative and inescapable * * *.' 12 C.J. 699 § 40. Also see Blessing v. Galveston, 42 Tex. 641, 660; Walnut v. Wade, 103 U.S. 683, 26 L.Ed. 526; South Ottawa v. Perkins, 94 U.S. 260, 24 L.Ed. 154."

In 6 R.C.L. sec. 112, pp. 112, 113, the same doctrine is announced, in the following language: "Judicial Determination of Facts.—The constitutionality of a law is not to be determined on a question of fact to be ascertained by the court. If under any possible state of facts an act would be constitutional, the courts are bound to presume that such facts exist; and therefore the courts will not make a separate investigation of the facts, or attempt to decide whether the legislature has reached a correct conclusion with respect to them. Accordingly the validity of an enactment cannot be made to depend on the facts found on the trial of the first case involving the validity of such statute. If the rule were otherwise, the trial of the main issue would necessarily be delayed until the preliminary fact on which the validity of the contested legislative act depended should be first tried and determined on testimony; and, since this testimony might be different in different cases, there would be involved an absurdity of declaring the law constitutional one day and unconstitutional the next. * * " We therefore deny the request of appellees for additional conclusions.

■ As stated in our original opinion, we think that, in a general sense, the purposes for which the Act under consideration grants money to the counties (mentioned in Sec. 3) are governmental in nature and affected with a public interest. We are also of opinion that, the Legislature is not forbidden to use counties as agencies for the discharge of state obligations, provided, of course, the legislation otherwise is free from constitutional objections. For these reasons, we did not deem it necessary to comment upon the numerous authorities cited by appellees in support of these propositions.

However, a few cases cited by appellees, not heretofore commented upon, doubtless are sufficiently in point to warrant comment and differentiation. The acts of the Legislature involved in Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761, and in Road Dist. No. 4, etc. v. Allred, 123 Tex. 77, 68 S.W.2d 164, dealt with statutory, as distinguished from constitutional, funds. As the funds were created by statute, the Legislature could direct their expenditure for any governmental purpose, without reference to the particular limitations and restrictions applicable to the Act

under consideration. The Act involved in Highway Commission v. Vaughn, Tex.Civ. App., 288 S.W. 875, being authorized by Art. 3, Sec. 56, Subd. 6, of the Constitution, for the erection of an interstate bridge, was an exception to the general rule, and belongs in same category with Aransas Pass v. Keeling, and Brazos River etc. Dist. v. McCraw, commented upon in the original opinion. We do not think the case of Lower Colorado etc. v. Mc-Craw, 125 Tex. 268, 83 S.W.2d 629, is even remotely in point, as the Act under consideration there, provided for the payment of the bonds of the reclamation district solely from its own revenues,—hence not analogous to the provisions of Senate Bill 224, Vernon's Ann.Civ.St. art. 7294a, that attempts to divert a constitutional fund, created for, and necessarily limited to, certain state purposes.

After due consideration, we overrule appellees' motion for rehearing.

lips Petroleum Company." Mo.St.Ann. §
4048, p. 2849.